United States Court of Appeals
FOR THE EIGHTH CIRCUIT
No. 97-2491/2868

United States of America,

    Appellee/Cross-Appellant,

v.

Kim Lee Sykes,

    Appellant/Cross-Appellee.

    \* Appeals from the United States
    \* District Court for the Northern
    \* District of Iowa

_____

Submitted: February 12, 1998
Filed: May 7, 1998

_____

Before McMILLIAN and LOKEN, Circuit Judges, and BOGUE,[1] District Judge.

_____

BOGUE, Senior District Judge

On February 20, 1997 a jury convicted the defendant, Kim Lee Sykes, on one count of distribution of "crack" cocaine and one count of conspiracy to distribute 50 grams or more of "crack" cocaine. 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(B)(iii), 846, and

_____

[1]The Honorable Andrew W. Bogue, Senior United States District Judge for the District of South Dakota, sitting by designation.

841 (b)(1)(A).  Sykes appeals the district court's[2] denial of his various pretrial motions to suppress.  The Government cross-appeals the district court's refusal to impose a two-level upward adjustment to the base offense level for obstruction of justice.  We affirm.

I.

In September 1989, Sykes was the target of a controlled buy of "crack" cocaine conducted by agents of the Federal Drug Task Force in Waterloo, Iowa.  After consulting with his attorney, Sykes signed a plea agreement with the federal prosecutors and agreed to cooperate with agents of the task force.  The plea agreement provided that Sykes would plead guilty to a two count information charging him with possession, distribution, and conspiracy to possess and distribute "crack" cocaine.  In return, the Government granted Sykes a "limited-use" immunity, agreeing that no other criminal charges would be filed against Sykes based upon the information then in the Government's possession or later provided by Sykes pursuant to his agreement to cooperate.  Over the course of approximately one month following the signing of the plea agreement, Sykes was debriefed three times regarding  his involvement in controlled substance trafficking.  With his attorney present at all three interviews, Sykes made candid admissions about his involvement in drug trafficking.  Sykes' last interview was conducted on October 10, 1989.  In February 1990, Sykes was scheduled to be tried in Iowa state court on state drug trafficking charges.  Prior to the trial Sykes left the United States, moved to Saudi Arabia, and remained abroad for approximately five years.  In May 1995, as he re-entered the United States from Canada, Sykes was arrested on a federal warrant issued three months after he left the country.  Thereafter, he was indicted on charges stemming from the controlled buy conducted in 1989.

---

[2]The Honorable Michael J. Melloy, United States District Judge for the Northern District of Iowa, Eastern Division.

Prior to trial in this case Sykes filed a four-part motion seeking to suppress, *inter alia*, statements made by Sykes during his debriefings with the Government pursuant to the plea agreement. In his motion Sykes alleged that despite the written plea agreement between him and the Government, his attorney, Thompson, and the United States Attorney amended the agreement orally by agreeing that any information provided by Sykes pursuant to the agreement would not be used against him in any manner. In other words, Sykes argued his statements were entitled to "full-use" immunity per the plea agreement. Sykes further alleged that on the belief he enjoyed full immunity, he made statements and provided information that were inculpatory as to the crimes with which he was charged. Following a hearing on the motion, the district court found that Thompson made no agreements with the Government other than the original plea agreement signed by Sykes, and that even if he had, under the plea agreement Sykes was entitled to no immunity whatsoever because he breached the terms of his agreement to cooperate by absconding from the country for five years. The district court denied the motion. Sykes filed a motion for reconsideration and for further findings relative to his suppression motion. Sykes also filed a motion to suppress the statements based on violations of his Sixth Amendment right to effective assistance of counsel, claiming Thompson's representations that he indeed had full immunity fell below the standard of reasonableness. The district court held a second motion hearing and thereafter denied Sykes' motion, finding that Thompson did not advise Sykes concerning the existence of any immunity beyond the written agreement, and that Sykes never relied upon any such representations by Thompson.

## II.

On appeal Sykes argues that his statements made during his debriefings should have been suppressed because they were rendered involuntary by the fact that the Government reneged on its promise to grant full immunity for Sykes' cooperation. Alternatively, Sykes argues if no such agreement existed at the time he was debriefed, then he was denied effective assistance of counsel because his attorney advised him that he in fact had full immunity, and he relied on that advice to his detriment.

Before we can sustain either of Sykes' positions we must find, contrary to the district court's findings, either the existence of an oral agreement for full immunity, or, that Thompson advised Sykes of a full immunity agreement despite that none existed and Sykes relied on the erroneous advice in giving the inculpatory statements at the debriefings. We review the facts supporting the district court's denial of a motion to suppress for clear error, and we review *de novo* the legal conclusions that are based upon those facts. United States v. Cunningham, 133 F.3d 1070, 1072 (8th Cir. 1998).

At the suppression hearing Thompson did not testify that he in fact thought he had an oral agreement for full immunity. Rather, the record shows that Thompson believed the written plea agreement signed by Sykes was somewhat "fluid." There was oral and written evidence presented that Thompson was hopeful that if Sykes provided substantial assistance to the Government, it would in turn drop or reduce the charges against Sykes or otherwise recommend leniency to the district court. Other than Sykes' testimony that Thompson had assured him he had full immunity, there is no evidence in the record that an oral agreement for immunity had ever been reached. Moreover, the United States Attorney who prepared the plea agreement testified that if such an agreement had been reached, it would have been memorialized in a writing signed by the parties. The district court, who had an opportunity to observe the demeanor of the witnesses, is afforded great deference in its assessment of the witnesses' credibility. Cunningham, 133 F.3d at 1072. We cannot say the district court clearly erred in finding that no oral agreement for full immunity existed, and that Thompson did not communicate any belief in the existence of such agreement to Sykes. We therefore conclude that Sykes' motions to suppress were properly denied.

III.

The Government cross-appeals the district court's denial of an upward adjustment for obstruction of justice under U.S.S.G. § 3C1.1. Although the parties do

not contest the district court's factual findings relative to Sykes' departure from the country, they disagree as to whether such conduct amounts to obstruction of justice. Our review of this legal interpretation of a guideline is *de novo*. United States v. Eagle, 133 F.3d 608, 611 (8th Cir. 1998). We have thoroughly reviewed the record and find no error in the district court's determination that Sykes' conduct in connection with his absence from the United States did not warrant an obstruction of justice adjustment. Affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.