189 F.3d 200 (2nd Cir. 1999)
 United States of America, Appellee,
v.
Brandon J. Bradbury, aka Jeffrey Bradley, aka Brian Bradbury, aka Brian Flynn, Defendant-Appellant,
99 Wittenberg Road, Bearsville, Ulster County, New York, Defendant.
 Docket Nos. 98-1556(L), 98-1557(CON)
August Term, 1998
 UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
 Argued June 7, 1999
Decided Aug. 16, 1999
 
 Defendant-Appellant Bradbury challenges the sentence imposed by the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., Judge), contending that the district court erroneously imposed a two-level enhancement for obstruction of justice, and that it improperly calculated his base offense level based on self-incriminating disclosures that he made after he entered into a plea and cooperation agreement.
 Vacated and remanded.
 Andrew J. Weinstein, New York, NY (Edward W. Hayes, Marc Fernich, of counsel), for Defendant-Appellant.
 Barbara D. Cottrell, Assistant United States Attorney, Albany, NY (Thomas J. Maroney, United States Attorney, of counsel), for Appellee.
 Before: WINTER, Chief Judge, OAKES and SACK, Circuit Judges.
 OAKES, Senior Circuit Judge:
 
 I. INTRODUCTION
 
 1
 Pursuant to a plea and cooperation agreement, Brandon Bradbury pleaded guilty in 1995 to a kidnapping conspiracy charge involving 378 pounds of marijuana. After he was later indicted on different charges, he pleaded guilty to a firearm charge under a second plea agreement in 1998. The United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., Judge) sentenced Bradbury on both charges. In determining Bradbury's base offense level for the kidnapping conspiracy, the court considered statements that Bradbury made after signing the 1995 agreement that revealed that the conspiracy involved more marijuana than previously believed.
 
 
 2
 On appeal, Bradbury contends that the district court improperly increased his base offense level for the original kidnapping conspiracy charge based on his post-plea disclosures. He also argues that the court erroneously imposed a two-level enhancement for obstruction of justice and that the district court's findings do not permit meaningful appellate review. For the reasons that follow, we agree and therefore vacate and remand for resentencing.
 
 II. BACKGROUND
 
 3
 In April 1995, Brandon J. Bradbury was indicted in the Northern District of New York on one count of kidnapping conspiracy in violation of 18 U.S.C. § 1201(c) and one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1), stemming from the March 1995 abduction of Thomas Boykin (the "1995 Indictment").
 
 
 4
 Shortly thereafter, the parties entered into a plea and cooperation agreement (the "1995 Agreement"), which provided that Bradbury would plead guilty to the kidnapping conspiracy charge and cooperate with the government's investigation of "activities of himself and others." The 1995 Agreement specified that the kidnapping conspiracy involved the transport of 378 pounds of marijuana. The agreement further provided that, as required by § 1B1.8 of the Sentencing Guidelines, the government would not use Bradbury's post-plea statements and testimony against him so long as he fully complied with the agreement. Conversely, if the government adjudged Bradbury to have given "false, incomplete, or misleading information or testimony" or to have otherwise violated the agreement, the agreement could be "deemed null and void" and Bradbury could be prosecuted on the basis of any information that he had provided to the government. In exchange for Bradbury's plea and cooperation, the government promised to advise the sentencing court of any assistance provided by Bradbury. The agreement postponed Bradbury's sentencing pending the completion of his cooperation.
 
 
 5
 Bradbury immediately began to participate in the government's investigation of George Travis Spilsbury (the leader of the Boykin kidnapping) and others. The Probation Office completed its first presentence investigation report for Bradbury in October 1995 (the "1995 PSR"), which determined that the base offense level for kidnapping conspiracy connected with the transport of 378 pounds of marijuana was 30. At about the same time, the government approved a nine-level downward departure due to the assistance that Bradbury had provided.
 
 
 6
 Bradbury continued to cooperate after the release of the 1995 PSR through at least May 1997. During this period, he revealed that the kidnapping conspiracy involved 1,048 pounds of marijuana, rather than 378 pounds as stated in the 1995 Agreement. (According to Bradbury, the government would not have known the true amount of marijuana at issue had he not disclosed it during his cooperation. The government argued below, however, that it learned the true amount of marijuana involved from sources other than Bradbury's disclosures.)
 
 
 7
 Although most of Bradbury's post-plea disclosures were apparently truthful, Bradbury lied on April 21, 1997, when he appeared without counsel at the U.S. Attorney's office to prepare his testimony for Spilsbury's upcoming trial. During the interview, Bradbury falsely minimized his own role and ascribed a greater role to Spilsbury in the drug conspiracy and kidnapping. When Bradbury was accused of lying, he recanted and apologized.
 
 
 8
 The government determined that Bradbury had breached the 1995 Agreement by misrepresenting his role and could not be called as a witness at Spilsbury's trial. Accordingly, it informed Bradbury's counsel that it would not file a § 5K1.1 motion for a downward departure based on substantial cooperation. The government also indicted Bradbury on two new charges, conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846 and use of a firearm during and in relation to crimes of violence and drug trafficking in violation of 18 U.S.C. § 924(c) (the "1997 Indictment").
 
 
 9
 In response, Bradbury filed motions seeking specific performance of the 1995 Agreement (in particular, Bradbury wanted the government to file a § 5K1.1 motion) and dismissal of the new indictment. The parties agreed that a hearing would be conducted, and a ruling on Bradbury's motions was reserved pending that hearing.
 
 
 10
 No hearing was ever held. Instead, the parties settled their dispute through a second plea agreement (the "1998 Agreement"), under which Bradbury pleaded guilty to the firearm charge contained in the 1997 Indictment. Because Bradbury withdrew his motion for specific performance of the 1995 Agreement, there was never any judicial determination as to whether Bradbury had breached that agreement.
 
 
 11
 The Probation Office submitted a second presentence investigation report (the "1998 PSR") in May 1998. Based on Bradbury's post-plea disclosures that revealed that the conspiracy involved 1,048 pounds of marijuana, the 1998 PSR set the base offense level for the kidnapping conspiracy at 32 -- an increase from 30 as stated in the 1995 PSR.[1] The 1998 PSR also recommended a two-level enhancement for obstruction of justice due to Bradbury's conduct during the April 21, 1997, meeting.
 
 
 12
 In June 1998, the government filed a § 5K1.1 motion for a nine-level downward departure. The government reported that Bradbury was interviewed on sixteen occasions between April 1995 and March 1996, placed 104 consensually monitored telephone calls, and participated in a videotaped meeting with co-defendant George Spilsbury prior to Spilsbury's arrest. It also noted that, as a result of Bradbury's cooperation, eleven individuals were indicted for marijuana trafficking and kidnapping.
 
 
 13
 Bradbury objected to the 1998 PSR's calculation of the base offense level of 32 for the kidnapping conspiracy charge. He maintained that, absent an express judicial finding that he had breached the 1995 Agreement, he could not be sentenced based on his post-plea disclosures that 1,048 pounds rather than 378 pounds of marijuana were involved. The government replied that by withdrawing his motion for specific performance of the 1995 Agreement, Bradbury waived his objection to the court's consideration of his post-plea disclosures.
 
 
 14
 Over Bradbury's objection, the district court determined that Bradbury's post-plea statements could be counted because the 1995 Agreement was no longer binding. The court adopted most of the 1998 PSR's recommendations and Sentencing Guidelines analysis, except that it found the base offense level to be 30 rather than the PSR's 32; it did not explain how it reached this level. Bradbury was sentenced to 86 months in prison, and now appeals.
 
 III. DISCUSSION
 
 15
 Bradbury raises two arguments on appeal: (A) that the district court erroneously imposed a two-level enhancement for obstruction of justice based on his conduct during the April 21, 1997, interview; and (B) that the district court improperly increased his base offense level for the kidnapping conspiracy charge based on his post-plea disclosures. We consider each argument in turn.
 
 A. Obstruction of Justice
 
 16
 Under the Sentencing Guidelines, a sentencing court may increase a defendant's offense level by two levels if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense." U.S. Sentencing Guidelines Manual ("U.S.S.G") § 3C1.1 (1998). As noted above, the 1998 PSR recommended a two-level § 3C1.1 enhancement based on Bradbury's conduct during the April 21, 1997, meeting. At issue on appeal is whether the district court adopted this recommendation and enhanced Bradbury's sentence under § 3C1.1, and, if so, whether such enhancement was proper.
 
 
 17
 As an initial matter, the record is unclear as to whether the district court enhanced Bradbury's sentence under § 3C1.1 for obstruction of justice. Although the district court never expressly found that Bradbury obstructed justice, it adopted most of the PSR's recommendations. On the one hand, the court's failure to explicitly reject the PSR's finding on obstruction suggests that the court agreed with that finding. On the other hand, the 1998 PSR recommended a base offense level of 32 and the district court, without explanation, found the base offense level to be 30. In the government's view, the court's unexplained two-level departure from the PSR's base offense level indicates that the court implicitly repudiated the PSR's obstruction enhancement. But even the government concedes that we should remand for clarification.
 
 
 18
 Because the district court failed to explain how it reached the base offense level of 30, and because we cannot unequivocally determine whether Bradbury's sentence included the § 3C1.1 enhancement for obstruction of justice, we cannot offer meaningful review, and the matter must be remanded for appropriate findings.
 
 
 19
 In addition, even if we firmly believed that the district court imposed the obstruction enhancement,[2] we would still vacate the sentence and remand for further factual findings. The record, as it now stands, simply does not support an enhancement for obstruction of justice. "In order to impose a § 3C1.1 obstruction of justice enhancement on a defendant who has raised an issue as to his state of mind concerning the conduct alleged to have obstructed or impeded the administration of justice, the court must make a 'specific finding of intent.'" United States v. Reed, 49 F.3d 895, 901 (2d Cir. 1995) (quoting United States v. Thomas Hamilton, 907 F.2d 282, 285 (2d Cir. 1990); citing United States v. Defeo, 36 F.3d 272, 276 (2d Cir. 1994)); see alsoUnited States v. Hernandez, 83 F.3d 582, 585 (2d Cir. 1996) ("For an obstruction of justice to be found, a court must establish that the defendant had the specific intent to obstruct justice.").
 
 
 20
 Because Bradbury objected to the 1998 PSR's proposed § 3C1.1 enhancement, the district court was required to make specific, clear, and reviewable findings as to whether Bradbury intended to obstruct justice. See Reed, 49 F.3d at 900-01 ("When the sentencing court resolves a disputed issue of fact, it is required to state its findings with sufficient clarity to permit appellate review.") (citing United States v. Lanese, 890 F.2d 1284, 1294 (2d Cir. 1989)). The district court did not resolve Bradbury's challenge to the 1998 PSR's proposed obstruction enhancement and the record does not contain the required finding that Bradbury willfully obstructed justice for purposes of a § 3C1.1 enhancement.
 
 
 21
 Nor may we infer that the district court made sufficient findings by noting that it adopted the factual findings in the 1998 PSR. We suggested in Reed that a remand for factual findings to support an obstruction enhancement might not be necessary where the sentencing court "explicitly relie[d] on factual assertions made in a PSR." Reed, 49 F.3d at 901 ("Where the sentencing judge neither clearly resolves the disputed issue nor explicitly relies on factual assertions made in a PSR, we must remand for further findings.") (citing United States v. Maturo, 982 F.2d 57, 62 (2d Cir. 1992)). Here, the 1998 PSR's conclusions were not sufficient to support an obstruction enhancement. It stated only that Bradbury gave "several materially false statements to agents of the Federal Bureau of Investigation[,] . . . concealed the identity and involvement of a co-conspirator, and provided false information about his involvement in the attack on Boykin, his father's presence at the Woodstock residence and the source of the firearms for the kidnaping." The 1998 PSR did not make the necessary finding that Bradbury, in making his false statements, acted with the requisite intent to impede the government's investigation and to obstruct justice. Thus, the district court's adoption of the 1998 PSR's conclusory statements describing Bradbury's alleged obstruction cannot save the § 3C1.1 enhancement. Remand is therefore necessary. See United States v. Williams, 79 F.3d 334, 337-38 (2d Cir. 1996) (remanding for resentencing where district court did not make, and PSR did not contain, adequate findings to support enhancement for obstruction of justice); Reed, 49 F.3d at 901-02.
 
 
 22
 Finally, Bradbury also asks that we hold as a matter of law that he did not willfully obstruct justice for purposes of a § 3C1.1 enhancement. We decline to do so, because that determination involves issues of fact -- such as whether Bradbury specifically intended to obstruct justice -- that should be addressed first by the district court. See United States v. Cassiliano, 137 F.3d 742, 745 (2d Cir. 1998) (noting that sentencing court's imposition of § 3C1.1 enhancement is subject to a mixed standard of review and that "sentencing court's findings as to what acts were performed, what was said, what the speaker meant by her words, and how a listener would reasonably interpret those words will be upheld unless they are clearly erroneous") (citing United States v. Shoulberg, 895 F.2d 882, 884 (2d Cir. 1990); United States v. Stroud, 893 F.2d 504, 506 07 (2d Cir. 1990)). Bradbury offers various additional bases to support vacating the sentence, but since we need not reach those other issues, we decline to do so.
 
 
 23
 In sum, we conclude that the district court did not adequately explain why it departed from the PSR's base offense level of 32, did not resolve Bradbury's challenge to the PSR's proposed obstruction enhancement, and did not issue findings that permit appellate review. Accordingly, we vacate the sentence and remand for resentencing.
 
 B. Base offense level
 
 24
 We next consider Bradbury's argument that the district court improperly increased the base offense level for the kidnapping conspiracy charge based on disclosures Bradbury had made after he signed the 1995 Agreement. Bradbury contends that his post-plea disclosures were "immunized" under § 1B1.8(a) of the Sentencing Guidelines, which provides
 
 
 25
 Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.
 
 
 26
 U.S.S.G. § 1B1.8(a). Section 1B1.8(b)(4) provides that "[t]he provisions of subsection (a) shall not be applied to restrict the use of information . . . in the event there is a breach of the cooperation agreement by the defendant." U.S.S.G. § 1B1.8(b)(4). In accordance with § 1B1.8, the 1995 Agreement pronounced that the government would not use Bradbury's statements and testimony against him so long as Bradbury did not breach the agreement.
 
 
 27
 The district court clearly relied on Bradbury's post-plea disclosures that the conspiracy involved 1,048 pounds of marijuana when it sentenced him on the conspiracy charge.
 
 
 28
 On appeal, Bradbury reiterates his claim raised below that § 1B1.8 prohibited the government and the district court from relying on his self-incriminating post-plea statements absent an express judicial finding that he had breached the 1995 Agreement. By contrast, the government argues that § 1B1.8 no longer immunized Bradbury's post-plea statements after it decided that Bradbury had breached the 1995 Agreement. It further asserts that Bradbury waived his claim that he did not breach the 1995 Agreement when he signed the 1998 Agreement and withdrew his motion for specific performance of the 1995 Agreement. Put another way, the government contends that the second plea agreement in effect settled the issue of Bradbury's alleged breach, and that Bradbury, by settling the issue, waived his objection to the court's use of his post-plea statements.
 
 
 29
 In our view, the district court should not have considered Bradbury's post-plea disclosures when it determined his base offense level on the kidnapping conspiracy charge. Bradbury was insufficiently warned that, if he signed the 1998 Agreement, § 1B1.8(a) would no longer immunize his post-plea statements regarding the amount of marijuana at issue, and that those statements could be used to determine his base offense level on the kidnapping conspiracy charge. Even if the 1998 Agreement indeed settled the breach issue, reversal and remand would be necessary because Bradbury was not given adequate notice that he was being exposed to an adjustment to the original kidnapping conspiracy charge as well as to the sentence for the new firearm charge.
 
 
 30
 Moreover, the 1998 Agreement did not necessarily settle the breach issue. We recently articulated principles governing our interpretation of whether a plea agreement has been breached:
 
 
 31
 We have long interpreted plea agreements under principles of contract law, but have noted that "[p]lea agreements ... are unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain." Our concern for fairness is rooted in an appreciation of the fact that, unlike ordinary contracts, plea agreements call for defendants to waive fundamental constitutional rights, and in an awareness that the Government generally drafts the agreement and enjoys significant advantages in bargaining power. Accordingly, we hold the Government "to the most meticulous standards of both promise and performance." In keeping with these general principles, we determine whether a plea agreement has been breached by looking to the reasonable understanding of the parties and by resolving any ambiguities against the Government.
 
 
 32
 In re Altro, 180 F.3d 372, 374-75 (2d Cir.1999) (citations omitted).
 
 
 33
 Bradbury never conceded that he breached the 1995 Agreement. The government emphasizes the fact that Bradbury acknowledged below that he waived the hearing when he entered into the 1998 Agreement. But Bradbury's waiver of the hearing did not constitute a concession that he had breached the 1995 Agreement such that the protections of § 1B1.8 should have been relaxed. Instead, the 1998 Agreement simply obviated the need for a hearing on Bradbury's motions.[3] Thus, because Bradbury signed the 1998 Agreement without adequate notice that his post-1995 Agreement admissions would be used against him, the government and the court should not have relied on those admissions to increase his base offense level. See U.S.S.G. § 1B1.8(a) & (b).
 
 
 34
 A case decided by the United States Court of Appeals for the Eighth Circuit is instructive. In United States v. Stevens, 918 F.2d 1383, 1384 (8th Cir. 1990), Stevens faced a jury trial for a drug conspiracy involving approximately 150 pounds of marijuana. Shortly before his trial commenced, the government brought new charges for possession of marijuana and cocaine against him. See id. Following his conviction on the conspiracy charge, Stevens pleaded guilty to the cocaine possession charge and agreed to cooperate with government narcotics investigators. See id. Stevens was to be sentenced for the conspiracy conviction and the cocaine possession at the same proceeding. See id.
 
 
 35
 Before he was sentenced, Stevens admitted that he had breached the plea agreement by using drugs while the agreement was in effect. See id. The plea agreement was revoked and the parties entered into a new agreement, adding a stipulation that a factual basis existed for using 3,000 pounds of marijuana to determine Stevens's base offense level on the conspiracy conviction. See id. Significantly, Stevens informed the court that he understood and accepted the terms of the new agreement. See id. at 1384, 1387 n.2. Stevens was sentenced on the basis of 3,000 pounds -- rather than 150 pounds -- of marijuana. See id. at 1387.
 
 
 36
 Stevens argued on appeal that the prosecutor violated § 1B1.8 by disclosing Stevens's admissions that the marijuana conspiracy involved 3,000 pounds of marijuana. See id. at 1386. The court rejected his appeal on grounds that Stevens had "voluntarily stipulated" to the reference to 3,000 pounds of marijuana when he signed the second plea agreement, and had "clearly stated on the record" that he agreed to those terms. Id. at 1387. The court determined that, given such circumstances, § 1B1.8 was not violated. The court predicted, however, that Stevens's argument "might have validity under other circumstances." Id. at 1387.
 
 
 37
 Under Stevens, a defendant who signs one plea agreement, breaches that agreement and loses the protection of § 1B1.8, and agrees to new -- and more damning -- facts in a subsequent plea agreement, may be sentenced based on those new facts. Stevens is easily distinguishable from the instant case: Bradbury neither conceded that he breached the first agreement nor agreed to a greater amount of marijuana in the second agreement. In fact, the 1998 Agreement nowhere mentioned the amount of marijuana at issue in the kidnapping conspiracy, whereas the 1995 Agreement explicitly specified that 378 pounds of marijuana were involved. Under Stevens, then, Bradbury should have been held accountable for the amount of marijuana to which he had agreed (378 pounds) and the district court should not have considered Bradbury's post-plea disclosures to determine his base offense level.
 
 
 38
 As the Tenth Circuit has observed, "[o]ne of § 1B1.8's most important advantages is that federal prosecutors can . . . assure potential informants that their statements will in no way be used against them." United States v. Shorteeth, 887 F.2d 253, 257 (10th Cir. 1989). This advantage would be undercut were Bradbury to lose § 1B1.8's protection by signing the 1998 Agreement when he received inadequate notice that his post-plea admissions would be used against him. Because the district court violated § 1B1.8 by considering Bradbury's post-plea disclosures when it determined his base offense level for the drug-related kidnapping conspiracy charge, we vacate Bradbury's sentence and remand for resentencing. SeeUnited States v. Amato, 46 F.3d 1255, 1262-63 (2d Cir. 1995) (remanding for reconsideration where it appeared likely that district court enhanced sentence based on information which defendant was entitled, under his cooperation agreement and under § 1B1.8, to have excluded from consideration); United States v. Fant, 974 F.2d 559, 564-65 (4th Cir. 1992) (holding that government, by seeking to enhance defendant's sentence based on information that defendant had provided in reliance on plea agreement, violated plea agreement and § 1B1.8; vacating and remanding for resentencing).
 
 
 39
 On remand, the district court may not rely on Bradbury's post-plea disclosures when determining his base offense level for the kidnapping conspiracy. The parties may present evidence showing what information the government had validly obtained from non-immunized sources, that is, from sources other than Bradbury's statements during his cooperation. For example, the government suggested below that it knew the conspiracy involved more than 378 pounds of marijuana based on the testimony of Bradbury's co-conspirators who had also cooperated with the government. If the government can prove from valid, non-immunized sources that the conspiracy involved more than 378 pounds of marijuana, the court may sentence Bradbury accordingly. Otherwise, the base offense level should be calculated based on the transport of 378 pounds of marijuana.[4]
 
 IV. CONCLUSION
 
 40
 For the foregoing reasons, we vacate the sentence and remand for resentencing.
 
 
 
 Notes:
 
 
 [1]
 The 1998 PSR originally determined that the base offense level was 36, but was later amended to reflect a base offense level of 32.
 
 
 [2]
 Bradbury asserts that the district court unquestionably adopted the PSR's § 3C1.1 enhancement, imposed a base offense level of 30, added two levels for obstruction, and subtracted two levels for acceptance of responsibility.
 
 
 [3]
 The two motions that would have been decided at the hearing were completely resolved by the 1998 Agreement. Bradbury's first motion sought specific performance of the government's alleged obligation in the 1995 Agreement to file a downward departure motion. Because the government promised to file a downward departure motion under the 1998 Agreement, Bradbury had no need to pursue his specific performance motion. Bradbury's second motion sought dismissal of the 1997 Indictment; Bradbury's guilty plea to the firearm charge under the 1998 Agreement obviously resolved the issue raised in his second motion.
 
 
 [4]
 Bradbury seems to argue on appeal that the proper base offense level for the kidnapping conspiracy charge is 24, which would have been correct if the conspiracy involved no drugs whatsoever. But the 1995 Agreement explicitly stated that the conspiracy involved 378 pounds of marijuana, and Bradbury agreed to this amount by signing that agreement. Accordingly, his sentence for the kidnapping conspiracy charge should be calculated based on the fact that the conspiracy involved the transport of 378 pounds of marijuana. See Stevens, 918 F.2d at 1387 (stating that defendant's base offense level should be calculated based on 3,000 pounds of marijuana, because defendant had voluntarily stipulated to that amount in plea agreement).