**UNITED STATES of America,**
**Appellee,**

v.

**Michael A. BROWN, Defendant–**
**Appellant.**

**Docket No. 02–1226.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 19, 2002.

Decided Feb. 28, 2003.

---

James E. Long, Albany, NY, for Appellant.

Barbara D. Cottrell, Senior Litigation Counsel, Office of the United States Attorney for the Northern District of New York, Albany, NY (Joseph A. Pavone, United States Attorney, Steven A. Tyrrell, Assistant United States Attorney, Northern District of New York, Albany, NY, of counsel), for Appellee.

Before: FEINBERG, MESKILL and CALABRESI, Circuit Judges.

MESKILL, Circuit Judge.

Appeal from a judgment entered on April 4, 2002 in the United States District Court for the Northern District of New York, Scullin, *C.J.* The defendant pled guilty to one count of possession with intent to distribute a mixture and substance containing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and was sentenced principally to 140 months imprisonment. This appeal addresses the district court's decision to apply an enhancement pursuant to U.S.S.G. § 3C1.1 for obstruction of justice, its denial of credit for acceptance of responsibility, and its refusal to grant the defendant's motion for a downward departure based on his alleged cooperation with the government.

## BACKGROUND

*The Charges and Brown's Decision to Cease Contact with the DEA Agents*

Defendant-appellant Michael Brown was arrested on December 5, 2000 after authorities retrieved from him a bag containing 5.25 grams of crack cocaine. Later that day, a criminal complaint was filed against Brown in federal court. He made his initial appearance before a magistrate judge and was released on a $10,000 personal recognizance bond in anticipation of his cooperation with Drug Enforcement Administration (DEA) agents. The record does not reveal a formal, written cooperation agreement executed by the parties. On that same day, the magistrate judge set conditions of release, which required, among other things, that Brown report to the DEA on a regular basis, and that he obtain the DEA's permission to travel outside of the Northern District of New York.

Brown maintained regular contact with the DEA for approximately two months, at which point his whereabouts became unknown. On February 23, 2001, a fugitive warrant was issued for Brown's arrest. While the probation department later determined that Brown had left the jurisdiction for a short period of time, allegedly to visit his mother, he ultimately was apprehended in the Northern District of New York approximately five weeks later. On the government's motion, Brown's bail subsequently was revoked. On April 5, 2001, a grand jury returned an indictment charging Brown with one count of possession with the intent to distribute cocaine

base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Thereafter, on September 28, 2001, Brown entered into a plea agreement with the government and entered a plea of guilty in district court.

*Presentence Interview and Report*

In his presentence interview, Brown told the probation department that following his release from custody in December 2000, and pursuant to his unwritten agreement to cooperate, he obtained contact information, made calls, and purchased narcotics at the direction of the DEA. He related to the probation department that after approximately two months, the DEA wanted him to "buy off anybody," meaning that he was asked to enter into drug transactions with a larger number and greater variety of people than he was accustomed. Brown explained that this placed him in danger because people on the street "knew he did not operate like that." He stated that because he felt that his life was in danger, he ceased his cooperation.

The Presentence Report (PSR) recommended (1) that an enhancement be applied pursuant to U.S.S.G. § 3C1.1 for Brown's alleged "obstruction of justice," and (2) that he be denied any credit for acceptance of responsibility under U.S.S.G. § 3E1.1 and its commentary. The PSR stated that by "disobeying an order of the Court to report to agents and becoming a fugitive from justice, [Brown] willfully obstructed ... the administration of justice during the course of the investigation and prosecution of the instant offense of conviction, and the obstructive conduct related to [Brown's] offense of conviction." Explaining its recommendation that Brown not receive a reduction for acceptance of responsibility, the PSR noted that the Guidelines suggest that a defendant who receives an obstruction enhancement under section 3C1.1 ordinarily is ineligible for credit under section 3E1.1. *See* U.S.S.G.

§ 3E1.1, cmt. n. 4 (2001). Accordingly, the PSR's recommendation that Brown not receive credit under section 3E1.1 was based solely on the application of the obstruction enhancement, as opposed to specific facts contained in the PSR.

*The Sentencing and Brown's Motion for a Downward Departure*

Prior to sentencing, Brown's counsel objected to the obstruction-of-justice enhancement as well as the denial of a reduction for acceptance of responsibility. Brown also moved for a downward departure based on his brief cooperation, claiming (as the government later conceded) that the information he provided led to portions of the indictment in *United States v. Bermudez, et al.,* 01 CR 0447. In his motion, Brown reiterated that he "cooperated as much as he possibly could with the DEA agents until he started feeling as if he was being put in danger." Thus, Brown argued, he did not cease contact purposely to violate the law; he ceased contact because he feared for his safety. In response, the government maintained that the agents never placed Brown in harm's way, and that it was Brown who put himself in danger. To support its contention in this respect, the government was prepared to present testimony from the agent who had primary contact with Brown.

The district court did not take any testimony to determine whether Brown ceased cooperation and left the jurisdiction with the intent to obstruct justice. Rather, it denied Brown's motion for a downward departure and adopted the PSR's recommendation that he receive no credit for acceptance of responsibility and that his sentence be enhanced based on his obstruction of justice. Specifically, the district court commented:

I don't think I can give acceptance having found, and I agree, with the obstruc-

tion of justice, by fleeing when he was supposed to be cooperating. There's no question that this obstructed the justice, the investigation, prosecution of cases. So I concur with the probation department in that respect as well.

In calculating Brown's sentence, the district court set Brown's base offense level at 26. It then added the two-level obstruction-of-justice enhancement, bringing Brown's adjusted offense level to 28. When combined with his criminal history score of VI, Brown received a range of 140 to 175 months imprisonment. The court sentenced Brown to 140 months imprisonment, a term of supervised release, and a $100 special assessment.

This appeal followed.

## DISCUSSION

I. *The Obstruction–of–Justice Enhancement*

A. *Standard of Review*

■ The imposition of an obstruction-of-justice enhancement is subject to a mixed standard of review. *See United States v. Cassiliano*, 137 F.3d 742, 745 (2d Cir. 1998). As such, we must "accept the findings of fact of the district court unless they are clearly erroneous." *United States v. Woodard*, 239 F.3d 159, 161 (2d Cir.2001) (internal quotation marks omitted). However, a ruling that those facts "constitute obstruction or attempted obstruction under the Guidelines ... is a matter of legal interpretation and is to be reviewed *de novo*." *Cassiliano*, 137 F.3d at 745.

B. *Specific Intent Required for Obstruction–of–Justice Enhancement*

■ Section 3C1.1 of the Sentencing Guidelines provides for a two-step increase in offense level if

(A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense.

U.S.S.G. § 3C1.1 (2001). We have repeatedly held that "an enhancement under § 3C1.1 is appropriate only if the district court makes a finding that the defendant had the specific intent to obstruct justice, i.e., that the defendant consciously acted with the purpose of obstructing justice." *Woodard*, 239 F.3d at 162 (internal quotation marks omitted). *See also United States v. Bradbury*, 189 F.3d 200, 204 (2d Cir.1999) (vacating sentence and remanding for resentencing where district court did not make required finding concerning defendant's state of mind before applying obstruction-of-justice enhancement); *United States v. Reed*, 49 F.3d 895, 902 (2d Cir.1995) (same). Such a finding is essential, as we have recognized that the term "willfully" implies a *mens rea* requirement. *Reed*, 49 F.3d at 900. When making a finding as to a defendant's specific intent to obstruct justice, a district court may look to and rely on circumstantial evidence and all reasonable inferences that may be drawn from that evidence. *See United States v. Carty*, 264 F.3d 191, 194 (2d Cir.2001).

■ Here, prior to sentencing, Brown filed a motion for a downward departure in which he elaborated on his objections to the PSR's recommendations. In his motion, he maintained that he stopped cooperating with the DEA only when he began to feel the agents were putting his life in danger by requesting that he make purchases in obvious places from people with

whom he would not normally deal. Brown did not end his cooperation with the DEA purposely to violate the law, his argument goes, he did so only because he was concerned for his safety. At sentencing, mindful of the dispute concerning Brown's motivation for his decision to stop cooperating, the government requested the agent who had primary contact with Brown to appear and be prepared to provide testimony concerning the government's treatment of Brown during his two months of cooperation.

Rather than conducting a hearing and resolving the issue regarding Brown's specific intent, the district court noted only that Brown "fle[d] when he was supposed to be cooperating." It then summarily concluded that there was "no question that this obstructed the justice, the investigation, prosecution of cases." That Brown stopped cooperating and left the jurisdiction was never in dispute. What was in dispute, and remains so, is whether Brown took these actions with the specific intent to obstruct or impede the administration of justice. *See Woodard,* 239 F.3d at 162 ("but the question that needs an answer is whether [the defendant] left the jurisdiction . . . with the specific intent to 'obstruct[ ] . . . the administration of justice'"). The district court's failure to resolve this dispute and make the necessary finding concerning Brown's mental state requires that we vacate the sentence and remand for resentencing. *See id.* at 163 (remanding for resentencing where district court "made insufficient factual findings to support an enhancement for obstruction of justice under § 3C1.1"); *Bradbury,* 189 F.3d at 205 (same); *Reed,* 49 F.3d at 902 (remanding where district court applied enhancement but failed to "find that [the defendant's] intent was to obstruct justice").

Citing *United States v. Feliz,* 286 F.3d 118, 121 (2d Cir.2002), the government contends that the underlying facts here are undisputed and support the " 'virtually inescapable' conclusion that [Brown] must have acted with the requisite intent." Although we have held that certain conduct "is so inherently obstructive of the administration of justice that it is sufficient that the defendant willfully engaged in the underlying conduct, regardless of his specific purpose," *Reed,* 49 F.3d at 900, the underlying conduct that the district court identified below consisted only of Brown's failure to maintain regular contact with the DEA agents and his leaving the jurisdiction for a period of time, both of which violated the conditions of his release. In *Woodard,* however, we acknowledged that there was no support for the proposition that "disobedience of a condition of release can serve as a factual predicate for the obstruction of justice enhancement unless the defendant intended by such action 'to obstruct or impede the administration of justice.' " *Woodard,* 239 F.3d at 163 (quoting U.S.S.G. § 3C1.1). Likewise, as other courts have recognized, a defendant's refusal or failure to cooperate with authorities is not necessarily tantamount to conduct that impedes or obstructs justice. *See United States v. Williams,* 952 F.2d 1504, 1515–16 (6th Cir.1991) (noting that government's "real argument . . . that [the defendant's] failure to confess and cooperate with the government when first approached required the government to continue an investigation that might otherwise have been shortened[ ]" was "not supported by any provision in section 3C1.1"); *see also United States v. Sykes,* 144 F.3d 564, 565–67 (8th Cir.1998) (concluding that the district court's refusal to apply obstruction-of-justice enhancement was not erroneous even where defendant, who had pled guilty and entered into a cooperation agreement with the government, stopped

cooperating and left the country for five years).

### C. *Obstruction as to the Defendant's "Offense of Conviction" or an "Otherwise Closely Related Case"*

The district court's comments at sentencing suggest that an additional factual finding is required to determine whether Brown's actions obstructed the prosecution of his own case or whether his actions obstructed the government's prosecution of other cases not closely related to Brown's. The Application Notes to section 3C1.1 limit the reach of the enhancement to instances where the defendant's willfully obstructive conduct "(A) occurred during the course of the investigation, prosecution, or sentencing of the defendant's instant offense of conviction, and (B) related to (i) the defendant's *offense of conviction* and any relevant conduct; or (ii) an *otherwise closely related case,* such as that of a co-defendant." U.S.S.G. § 3C1.1, cmt. n. 1 (2001) (emphasis added). In light of the express terms of Application Note 1 to section 3C1.1, for the enhancement to apply, a defendant's conduct must have obstructed the prosecution or investigation of his own case, a case in which he was a co-defendant, or a closely related case. *See United States v. Pedragh,* 225 F.3d 240, 244 (2d Cir.2000) ("[O]ur court has frequently repeated the Supreme Court's statement that the commentary is 'binding authority,' unless it is inconsistent with the underlying guideline.")

■ The district court's statement that Brown's actions "obstructed the justice, the investigation, prosecution of cases" is ambiguous and could be read to mean that Brown's failure to cooperate in an investigation in which he was not a defendant or potential defendant, or his failure to cooperate in an investigation not closely related to his own, warrants application of the enhancement. A review of the government's arguments before both the district court and this Court suggests that the "prosecution" or "investigation" impeded by Brown's conduct was *United States v. Bermudez, et al.,* 01 CR 0447. Specifically, in urging the district court to apply the obstruction enhancement, the government explained that it was "put to considerable time and expense in locating, tracking and arresting [Brown] to secure his presence at the very judicial proceedings for which he now claims credit." The "judicial proceedings" for which Brown was "claim[ing] credit" appear to have been those related to the *Bermudez* indictment. The government, however, never asserts, nor does the record reflect, that Brown was a defendant or potential defendant in the *Bermudez* prosecution, or that the *Bermudez* prosecution was an "otherwise closely related case." U.S.S.G. § 3C1.1, cmt. n. 1 (2001).

In light of the pertinent Application Note, Brown's failure to cooperate in the *Bermudez* investigation, while frustrating to authorities, would not be a proper basis on which to apply the obstruction-of-justice enhancement. On remand, if the district court finds that Brown had the specific intent to obstruct or impede the administration of justice, it must also make a finding whether Brown's obstructive conduct "related to (i) [Brown's] offense of conviction and any relevant conduct; or (ii) an otherwise closely related case, such as that of a co-defendant." U.S.S.G. § 3C1.1, cmt. n. 1 (2001).

### II. *Acceptance of Responsibility*

■ Consistent with the Application Notes, we have held that "[t]he denial of credit for acceptance of responsibility under § 3E1.1 is usually appropriate when the court has found that the defendant's offense level should be increased under § 3C1.1 for obstruction, or attempted ob-

struction, of justice." *Reed,* 49 F.3d at 903 (citing U.S.S.G. § 3E1.1, cmt. n. 4). *See also United States v. McLeod,* 251 F.3d 78, 82–83 (2d Cir.), *cert. denied,* 534 U.S. 935, 122 S.Ct. 304, 151 L.Ed.2d 226 (2001) (noting that credit for acceptance of responsibility under section 3E1.1 "is unavailable, absent extraordinary circumstances, to a defendant properly found to merit an obstruction-of-justice enhancement"); *United States v. Defeo,* 36 F.3d 272, 277 (2d Cir. 1994) ("[I]t is rare that a defendant should be granted a reduction in offense level for acceptance of responsibility when the court has deemed it appropriate to increase [the defendant's] offense level for obstruction of justice."). Here, the PSR recommended that Brown be denied any credit for acceptance of responsibility based solely on its recommendation on the obstruction-of-justice enhancement. At sentencing, immediately after the government argued that Brown was not entitled to credit for acceptance of responsibility, the district court stated: "I don't think I can give acceptance having found, and I agree, with the obstruction of justice, by fleeing when he was supposed to be cooperating.... So I concur with the probation department in that respect as well."

The district court's comments suggest that its decision to deny credit under section 3E1.1 was based solely on what it considered the proper application of the obstruction-of-justice enhancement. Because the district court failed to make the requisite findings to support the obstruction-of-justice enhancement, however, we "cannot uphold its in-tandem denial of credit for acceptance of responsibility." *Reed,* 49 F.3d at 904. Accordingly, if, on remand, the district court finds that the obstruction-of-justice enhancement is not appropriate, the court should consider whether Brown is entitled to credit for acceptance of responsibility under section 3E1.1.

### III. Denial of Brown's Motion for Downward Departure

■■ Brown also argues that the district court erred in refusing to depart downward based on his allegedly providing "substantial assistance" to the government in the investigation that ultimately led to the *Bermudez* indictment. The decision whether to file a section 5K1.1 motion for a defendant's substantial assistance lies within the discretion of the government. *See United States v. Rexach,* 896 F.2d 710, 713 (2d Cir.1990) (noting that the "question of substantial assistance is self-evidently a question that the prosecution is uniquely fit to resolve") (internal quotation marks omitted). While the government's discretion is limited in this respect by an obligation of good faith and fair dealing, *see id.* at 714, Brown has not alleged, nor does the record reflect, that the government's decision not to file a section 5K1.1 motion was motivated by bad faith. Accordingly, we hold that the district court did not err in refusing to depart downward based on Brown's alleged provision of substantial assistance.

### CONCLUSION

The sentence entered by the district court is hereby vacated and the matter is remanded for resentencing.