NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0870n.06

No. 11-5993

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Aug 09, 2012**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

      v.

JOHN FORTNER, a/k/a Derrick Quillen,

      Defendant-Appellant.

On Appeal from the United
States District Court for the
Western District of Tennessee

_____/

**Before:**     **GUY and CLAY, Circuit Judges; HOOD, District Judge[*]**

    **RALPH B. GUY, JR., Circuit Judge.**   Defendant John Fortner, a/k/a Derrick Quillen, appeals his plea-based sentence on one count of conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 841 and 846. Defendant challenges the denial of an acceptance-of-responsibility adjustment under USSG § 3E1.1, and argues that the resulting within-guidelines sentence of 210 months was substantively unreasonable. Both issues relate to defendant's post-plea arrest for his involvement in another conspiracy to manufacture methamphetamine, which defendant claimed to have joined in an attempt to provide assistance to the government. After a review of the record and applicable law, we find no error and affirm.

_____

[*]The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I.

Defendant was stopped shortly after midnight on April 13, 2010, after being observed removing a washer and dryer from an apartment in Memphis, Tennessee, and was found to be in possession of methamphetamine, marijuana, and Xanax. Defendant's claim that he was removing his mother's appliances at her request was not true, although he did have permission to stay in the apartment until a pending eviction became final. In the apartment, officers discovered supplies and other evidence indicating that methamphetamine was being "cooked" there. Defendant admitted that he had allowed others to cook methamphetamine in the apartment six or seven times, and that he was a "pill gatherer" for an ongoing conspiracy to manufacture and distribute methamphetamine. Although defendant identified himself as John Fortner, his given name was later determined to be Derrick Quillen.

The seven-count indictment charged defendant with conspiracies to manufacture and to possess with intent to distribute methamphetamine, as well as five substantive offenses related to the manufacture and distribution of methamphetamine. Pursuant to a written plea agreement entered in August 2010, defendant agreed to plead guilty to conspiracy to manufacture methamphetamine in exchange for dismissal of the remaining counts. No representations were made concerning the sentence to be imposed, and the government retained sole discretion to decide whether to file a motion for downward departure based on substantial assistance under USSG § 5K1.1 and 18 U.S.C. § 3553(e). Also, the government agreed to recommend the maximum reduction for acceptance of responsibility if it determined that defendant had accepted responsibility for the criminal conduct that was the

subject of the plea agreement. That could change, however, if defendant engaged "in conduct inconsistent with the acceptance of responsibility, including, but not limited to, participation in any additional criminal activities between [then] and the time of sentencing."

Defendant was forthcoming with information about his criminal activities before and after the indictment, outlined the distribution operation, and offered to cooperate with the government. At the change of plea hearing, defendant provided detailed information not only about his crimes but also about other methamphetamine operations. During a proffer session involving Detective Brandon Harris, defendant identified 35 individuals in the "tri-state" area who were involved in methamphetamine operations and offered to assist the government as a confidential informant with respect to his activities and other drug conspiracies he might be able to join.[1]

Defendant sought release on bond complaining that he was not receiving adequate medical treatment for a "myriad of ailments, including cancer."[2] The motion was granted only after the government joined the request for bond to allow the defendant to act as a confidential informant in the investigation of his and possibly other drug conspiracies. The conditions of defendant's release included: not committing a crime, reporting weekly to the DEA, and not traveling outside the Western District of Tennessee without the prior approval of Pretrial Services. Defendant was also instructed to contact Detective Harris or Detective

---

[1]Memphis, located in the southwestern most part of Tennessee, is near the border of Arkansas and Mississippi. This presumably is the "tri-state" area to which they refer.

[2]Defense counsel downplays defendant's exaggerated medical complaints and acknowledges that defendant did not have cancer, although defendant previously had surgery to remove part of a collapsed lung.

Teeters concerning his cooperation upon his release. Defendant's sentencing was adjourned to allow time for his cooperation to yield results. Because defendant did not provide substantial assistance, no motion for downward departure or variance was made at the time of sentencing.

After being released from federal custody on November 26, 2010, defendant called Detective Harris to tell him that he was going to go visit his mother. Detective Harris told the defendant to call again when he returned. Without getting permission to leave the district from Pretrial Services, defendant traveled to Alabama where his mother Sandra Fortner and stepfather John Fortner lived. Harris did not hear back from defendant, and later learned that the defendant had been arrested in Alabama on December 3, 2010. Defendant was arrested after the car he was riding in was stopped. A search of the vehicle yielded coffee filters, salt, two lithium batteries, two bottles of drain cleaner, a package of cold pills, and a small bag containing a white substance. Defendant was charged with possession of precursor substances with intent to manufacture methamphetamine and with falsely identifying himself as John Fortner.

Defendant's bond was revoked, he was returned to federal custody, and the government took the position that defendant's post-plea conduct was inconsistent with the acceptance of responsibility. Defense counsel filed a sentencing memorandum which argued, among other things, that defendant should not lose credit for acceptance of responsibility on account of his post-plea conduct. During the sentencing hearing, the district court heard testimony from Detective Harris, considerable argument on the issue of acceptance of

responsibility, and defendant's assertion during allocution that he thought he was doing "the right thing."

The district court denied the adjustment for acceptance of responsibility and calculated the sentencing guidelines range accordingly. The district court accepted the parties' more conservative estimate of the quantity of drugs involved and determined defendant's base offense level to be 28 under USSG § 2D1.1. Three points each were added (1) because the manufacture of methamphetamine created a substantial risk of harm to others or the environment, USSG § 2D1.1(b)(10)(C)(ii); and (2) because defendant's role in the offense was as a manager or supervisor, USSG § 3B1.1(b). Without the adjustment for acceptance of responsibility, defendant's total offense level was 34.[3]

Defendant's criminal history score consisted of 5 points for prior offenses and 2 points for having committed the instant offense while on probation for another offense, which resulted in a criminal history category of IV. The district court found the recommended sentencing guidelines range to be 210 to 262 months, considered the relevant sentencing factors, and sentenced defendant to a term of 210 months of imprisonment to be followed by five years of supervised release. This appeal followed.

## II.

The district court's determination regarding acceptance of responsibility is entitled to "great deference" and is reviewed for clear error. *United States v. Webb*, 335 F.3d 534, 538 (6th Cir. 2003); USSG § 3E1.1, cmt. 5 (2010) ("the determination of the sentencing judge

---

[3]Defendant's claim that his offense level would have been 30 (instead of 31) is based on an assumption that he also would have received a reduction under USSG § 5K1.1.

is entitled to great deference on review"); *see also United States v. Smagola*, 390 F. App'x 438, 444 (6th Cir. 2010).

A defendant may receive a decrease in his offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." USSG § 3E1.1(a) (two levels); *see also* § 3E1.1(b) (a third level). Although a timely plea of guilty combined with truthful admission of the conduct comprising the offense of conviction is considered to be significant evidence of acceptance of responsibility, that evidence "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." USSG § 3E1.1, cmt. 3. Specifically, post-plea criminal conduct that is of the same kind or is related to the offense of conviction is inconsistent with the acceptance of responsibility. *See United States v. Banks*, 252 F.3d 801, 806-07 (6th Cir. 2001); *United States v. Morrison*, 983 F.2d 730, 735 (6th Cir. 1993). Defendant cannot claim that his post-plea conduct was unrelated to the offense of conviction; rather, he asserted that he was acting either at the specific direction of Detective Harris, or under a well-intentioned if misguided attempt to assist the government's investigation.

Defendant claims that the district court failed to resolve a factual dispute over whether he acted with intent to engage in criminal conduct. Defendant relies on *United States v. Brown*, 321 F.3d 347 (2d Cir. 2003), in which a confidential informant left the jurisdiction to visit his mother and then stopped cooperating with the government. In *Brown*, the defendant claimed that he absconded out of fear for his safety, not with the purpose of violating the law. In fact, the court reversed the imposition of an obstruction-of-justice

enhancement under USSG § 3C1.1 because the district court had failed to conduct a hearing or make a finding that the defendant had the specific intent to obstruct justice as required under § 3C1.1. *Id*. at 351. The court also reversed the denial of the adjustment for acceptance of responsibility because it was based entirely on the defective application of the obstruction-of-justice enhancement. *Id*. at 353-54. Here, the district court conducted an evidentiary hearing and denied the adjustment for acceptance of responsibility on its own merits.

Moreover, it is evident from a review of the transcript of the sentencing hearing that the district court found that the defendant had not demonstrated that his actions were consistent with acceptance of responsibility at the time of his arrest in Alabama. Significantly, defendant had asserted in a handwritten letter to the district judge that he had been acting at the specific direction of Detective Harris at the time of his post-plea arrest. The letter stated in part:

> I was doing what I though[t] was right. Going to get the drugs and find out what was going on. I called the Harris and told him about it. He said go with it. Call him when I gite [sic] everything set up. The next night I was arrested for the crime that violated my bond. I feel like I didn't go [sic] that.

Defendant did not testify, so was not subject to cross-examination regarding this claim, but he reiterated during allocution that he thought he was doing the "right thing" in Alabama. ("I wish I could have done the right thing, and the things that happened in Alabama, I thought I was doing the right thing, like you said the double agent thing, and I accept responsibility for that, yeah, that was basically what happened, what was kind of happening, and I apologize for that.").

However, Detective Harris testified that he "absolutely" had not asked defendant to set up any kind of drug deal or arrest in Alabama. Harris also said he did not give permission for defendant to leave the jurisdiction, which was a determination to be made by Pretrial Services. Rather, when defendant called Harris to say he was going to go visit his mother, Harris simply told defendant to call when he returned. That was the last time Harris heard from him. Ruling on the issue, the district court specifically found:

> adjustment for acceptance of responsibility, I want to be candid, you do what the defendant did, you don't get acceptance. We can have a long discussion about it, you have written plenty about that. I understand, but he just got out, he immediately disobeyed a supervising officer, he went to Alabama, he's caught in a vehicle with a bunch of methamphetamine. And Mr. Bell, we can have a discussion about it, but the evidence is extremely clear.

In the colloquy that followed, defense counsel argued that defendant's earlier cooperation and plea was relevant, and the district court explained that the acceptance-of-responsibility adjustment requires the voluntary termination or withdrawal from criminal conduct. The district court addressed defendant's conduct again, stating:

> you're expected to not continue to associate with other people who are engaged in criminal conduct. There are other things, but those are the two that would be most relevant in the case. So he didn't do the second one, but we didn't know that at first, . . . so when you came in, changed your plea . . . we were just fine because we didn't know anything else. Then he went to Alabama and that's why . . . Detective Harris' testimony is important because they're trying to figure out, well, did he go there because he was supposed to go there, and the answer is well, no, he didn't.

Noting that no obstruction of justice enhancement was being requested, the district court explained that defendant did not receive an acceptance of responsibility adjustment because he

went back and committed the additional conduct . . . if we go back in and commit another offense, it is pretty inconsistent . . . [and defendant] went back and associated with other individuals who were engaged in criminal conduct. That doesn't really seem to be in any material doubt at all.

The district court also rejected defense counsel's suggestion that "maybe he did [so] under the misguided impression that he could somehow engage in his own double agent activity."

Defendant argued that, whether mistaken or confused, he had been trying to infiltrate a methamphetamine conspiracy to gather information for the government. Defense counsel emphasized that the defendant (1) had been released so he could become an informant, but did not receive any training or instruction; (2) went to visit family in Alabama and thought that getting involved a conspiracy there could help the government somehow; (3) was a long-time heavy drug user who likely had brain damage that could affect his reasoning; and, at worst, (4) was an addict whose predictable relapse into criminal activity was "more the result of government negligence than a failure to accept responsibility." Through the presentence report, defendant admitted to many years of daily use of methamphetamine, weekly use of cocaine, and heavy use of marijuana and LSD. There was no evidence of defendant's mental state, but defense counsel cited to medical research concerning the effects of methamphetamine use—including one study reporting that regular methamphetamine users had as much as an 11% loss of tissue in some areas of the brain.

Claiming that the district court failed to make necessary findings, defendant points to the following highlighted comment made in connection with the § 3553(a) factors:

I don't think that Detective Harris misunderstood at all, I think what he says is accurate and true. I do agree with Mr. Bell that you could make a pretty good argument that people who have had the extensive exposure to controlled

substances over that many years just might not get it right mentally. The government doesn't feel that way. The government feels like it just wasn't true. *I don't really have to resolve that.* All I can say is that it didn't work the way it has to work in the process. The person who is going to cooperate with the government has to work under the control of the officer. I'm convinced that is what the officer conveyed to the defendant. I'm convinced that the defendant should have understood that and then . . . decided to go to Alabama.

(Emphasis added.) Whatever the highlighted statement suggests by itself, the record is clear that the district court considered and rejected defendant's claim that he was either acting as an informant or reasonably believed that he was acting as an informant at the time of his arrest.

Finally, defendant relies on the same arguments to challenge the decision to deny defendant the adjustment for acceptance of responsibility notwithstanding his early guilty plea and apparently truthful admission of relevant conduct. However, in reviewing the district court's decision with "great deference," there is no basis to conclude that the district court committed clear error in finding that defendant's post-plea conduct was inconsistent with the acceptance of responsibility for his offense.

## III.

The substantive reasonableness of a defendant's sentence is reviewed for abuse of discretion. *United States v. Simmons*, 587 F.3d 348, 355, 358 (6th Cir. 2009). Sentences imposed within the applicable guideline range are afforded a presumption of reasonableness. *United States v. Vowell*, 516 F.3d 503, 516 (6th Cir. 2008). A sentence may be substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on

impermissible factors, fails to consider pertinent § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor. *Id*. at 510.

Defendant argues that his sentence was substantively unreasonable because the effect of a "single, understandable mistake" resulted in a substantial increase, if not a doubling, of his sentence. That mistake was thinking he could provide assistance to the government by getting involved in a new methamphetamine conspiracy shortly after being released on bond, which cost him the adjustment for acceptance of responsibility, the chance at a motion for downward departure for substantial assistance, and the increase in his criminal history category from II to IV. Defendant estimates that, if not for the arrest, his sentencing guidelines range would have been 108-135 months (based on an offense level of 30 and a criminal history category of II). Instead, the applicable guidelines range was determined to be 210-265 months (based on an offense level of 34 and a criminal history category of IV).

It is clear from the record, and defendant does not dispute, that the district court considered the relevant § 3553(a) factors and imposed a sentence at the bottom of the applicable sentencing guidelines range. Moreover, the district court specifically considered defendant's claim that he thought he was doing the "right thing" and did not abuse its discretion in denying a downward variance. Because defendant has not rebutted the presumption of reasonableness afforded a within-guidelines sentence, defendant's sentence was not substantively unreasonable.

**AFFIRMED.**