UNITED STATES of America,
Appellee,

v.

Guy WOODARD, Appellant.

Docket No. 00–1323.

United States Court of Appeals,
Second Circuit.

Argued:  Dec. 20, 2000.

Decided:  Feb. 1, 2001.

Richard C. Daddario, Assistant United States Attorney, New York, N.Y. (Mary Jo White, United States Attorney for the Southern District of New York, Baruch Weiss, Assistant United States Attorney, on the brief), for Appellee.

Ronald L. Garnett, New York, N.Y., for Appellant.

Before JACOBS, LEVAL and KATZMANN, Circuit Judges.

JACOBS, Circuit Judge:

In this sentencing appeal, appellant Guy Woodard argues that the United States District Court for the Southern District of New York (Baer, J.) erroneously imposed a two-level enhancement for obstruction of justice under United States Sentencing Guidelines § 3C1.1 without making the requisite finding that Woodard had the "specific intent to obstruct justice." *United States v. Defeo*, 36 F.3d 272, 276 (2d Cir.1994). Following Woodard's guilty plea and his entry into a cooperation agreement, he left the jurisdiction in violation of his terms of release, was arrested and jailed in Pennsylvania for drunk driving, and as a result was not available in the meantime for any court date that may have been (or otherwise would have been) scheduled, or for any other opportunities to cooperate with the authorities. We agree with Woodard that the district court's findings are insufficient to support the obstruction of justice enhancement. We therefore vacate the judgments and remand for re-sentencing.

## BACKGROUND

In December 30, 1996, Woodard was charged with transporting stolen checks in interstate commerce, in violation of 18 U.S.C. §§ 2314 & 2. Following his guilty plea on that charge, Woodard realized that he was a suspect in an unrelated case (involving the theft and negotiation of checks of the New York Power Authority), and offered to cooperate with the government. On December 4, 1997, the government filed a second information, charging Woodard with wire fraud and money laundering, to which Woodard pleaded guilty.

Simultaneously, Woodard entered into a cooperation agreement with the government that required, among other things, that he "cooperate fully with this Office, [and] the [FBI]," "truthfully testify before the grand jury and at any trial and other court proceeding with respect to any matters about which this Office may request his testimony," and "commit no further crimes whatsoever." The government undertook to recommend a downward departure by way of a 5K1 letter if Woodard cooperated to its satisfaction.[1] *See* U.S.S.G. § 5K1.1. Woodard duly provided information that led to a four-count indictment against Stephan Radulovich, who had helped Woodard launder proceeds of the Power Authority checks.

On March 1, 1999, the government sought a bench warrant for Woodard's arrest on the ground that Woodard had been arrested in New Jersey on February 7, 1999 and charged, *inter alia*, with forgery, and that he had been out of contact with the FBI, his lawyer, his wife, and his employer. The government did not then know that on February 18, 1999 Woodard had been arrested a second time, this time in Pennsylvania, for driving under the influence of alcohol, and was in a Pennsylvania jail, where he remained until he was arrested on the bench warrant and returned to federal custody in May 1999. In the meantime, the government negotiated a guilty plea with Radulovich.

When Woodard was to be sentenced on his guilty plea, the government withheld a 5K1 letter because Woodard breached his cooperation agreement, a ramification that is not the subject of appeal. In addition, the pre-sentence report ("PSR") recommended a base offense level (of 24) that included a two-level enhancement for obstruction of justice under Guidelines § 3C1.1, because Woodard "jumped bail as he failed to appear in Court. . . ."

At a hearing on January 4, 2000, the district court questioned the government's position that Woodard's conduct triggered the obstruction of justice enhancement. The court noted that Woodard "was in jail, in his view trying desperately to be here

---

1. When Woodard pleaded guilty to the second information, he had been free since June 13, 1997 on a $100,000 personal recognizance bond which restricted his travel to the Southern and Eastern Districts of New York.

for his appearance. Whether that can be characterized as a willful obstruction is a question in my mind." The district court solicited "authority for the concept ... that the bail jumping crime constitutes the kind of intentional wrong that can in fact ... add two points to the offense level" for obstruction of justice. In byplay between Woodard and his counsel at this hearing, Woodard complained to the court about his many frustrated efforts to reach his lawyer to discuss strategy prior to the hearing; his lawyer stated on the record that Woodard "breached his cooperation agreement and [ ] obstructed justice by leaving the jurisdiction and committing other crimes"; and Woodard dryly observed that his lawyer was sitting "at the wrong table, your Honor." At the end of this hearing, the court ordered that new counsel be appointed.

At a second sentencing hearing, held on March 14, 2000 and April 12, 2000, the district court noted that the PSR specified "jumping bail" as the reason for the |obstruction of justice enhancement. The ensuing exchange is the most direct consideration in the record about Woodard's specific intent to obstruct justice:

> THE GOVERNMENT: Your Honor, I think with respect to imposing an enhancement for obstruction of justice, I believe that the case law does say that the Court has to find the defendant willfully obstructed justice.
>
> THE COURT: But there is no argument about that.
>
> THE GOVERNMENT: And I think there isn't really, because he purposely left the jurisdiction.
>
> THE COURT: His argument [the prosecutor's] is that he willfully went to Pennsylvania, he w[ent] knowingly and willfully.

At sentencing on April 12, 2000, the court imposed the two-level obstruction enhancement. Woodard was sentenced principally to concurrent sentences of 100 months of imprisonment on count one of the first information, 100 months of impris-

onment on count two of the second information and 60 months of imprisonment on count one of the second information.

## DISCUSSION

### I.

Woodard argues on appeal that the district court failed to make a requisite finding that he had the "specific intent to obstruct justice," and erroneously relied on the PSR's apparent conclusion that the enhancement could be imposed based on his having "jumped bail." The government argues on appeal that the district court's finding that Woodard "knowingly and willfully" violated the conditions of release, viewed in context, amounted to a finding of specific intent to obstruct justice, and that Woodard's admitted travel to New Jersey and Pennsylvania and his admitted commission of criminal offenses—acts that violated his bail conditions and the terms of his cooperation agreement—"inescapably gave rise to an inference that he intended to obstruct justice." In any event, the government argues, Woodard's overall conduct was so "inherently obstructive" that the district court was not required to make a specific finding that Woodard obstructed justice.

### II.

We must "accept the findings of fact of the district court unless they are clearly erroneous" and we must "give due deference to the district court's application of the guidelines to the facts." *United States v. Fernandez*, 127 F.3d 277, 283 (2d Cir.1997) (citing 18 U.S.C. § 3742(e)). "A ruling that those facts constitute[d] obstruction of justice is a matter of legal interpretation that is to be reviewed de novo." *Id.*

Guidelines § 3C1.1 provides:

**Obstructing or Impeding the Administration of Justice**

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or

impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

■ "Obstructive conduct can vary widely in nature, degree or planning, and seriousness," § 3C1.1, appl. n. 3, but under the law of this Circuit, an enhancement under § 3C1.1 is appropriate only if the district court makes a finding that the defendant had the "specific intent to obstruct justice, i.e., that the defendant consciously acted with the purpose of obstructing justice." *United States v. Zagari,* 111 F.3d 307, 328 (2d Cir.1997); *United States v. Defeo,* 36 F.3d 272, 276 (2d Cir.1994). This finding is essential because "the term 'willfully' implies a mens rea requirement. . . ." *United States v. Reed,* 49 F.3d 895, 900 (2d Cir.1995).

The record reflects no "specific, clear and reviewable finding[ ]" that Woodard intended to obstruct justice. *United States v. Bradbury,* 189 F.3d 200, 204 (2d Cir.1999). The district court found that Woodard "willfully went to Pennsylvania, he w[ent] knowingly and willfully"; but the question that needs an answer is whether Woodard left the jurisdiction (or committed additional crimes) with the specific intent to "obstruct[ ] or impede[ ] . . . the administration of justice." U.S.S.G. § 3C1.1. As our prior decisions demonstrate, the district court's failure to make this specific finding was error. *Compare Defeo,* 36 F.3d at 276 (upholding the enhancement because defendant testified that "she absconded in February 1993 precisely in order to prevent her release conditions from being enforced."), *and United States v. Reed,* 88 F.3d 174, 181 (2d Cir. 1996) ("supportable findings" made where the defendant, among other things, "learned that the new scheduled [sentencing] date had passed and was advised by a DEA agent to turn himself in, but did not turn himself in; [and] decided unilaterally that he would delay sentencing for at least another month because that was his preference . . . ."), *with Bradbury,* 189 F.3d at 205 (statements in PSR that defendant gave "several materially false statements to agents of the [FBI] . . . concealed the identity and involvement of a co-conspirator, and provided false information about his involvement [in a crime]" held insufficient absent a specific finding that defendant "acted with the requisite intent to impede the government's investigation and to obstruct justice."), *and Zagari,* 111 F.3d at 329 (vacating the sentence where district court made no "specific findings that the defendant intentionally gave false testimony which was material to the proceeding in which it was given.").

We see no sufficient finding that Woodard left the jurisdiction with the intent to miss a court appearance or to otherwise "obstruct[ ] or impede[ ] . . . the administration of justice." U.S.S.G. § 3C1.1. The government conceded at oral argument that Woodard did not in fact miss a court date while he was out of the jurisdiction. Nor is there a basis in the present record to find that Woodard's absence was intended to cause the adjournment or cancellation of a hearing, or frustrated an initiative of justice that by reason of Woodard's absence (as defendant or witness) was not scheduled or undertaken. Specifically, there was no finding that Woodard's absence was intended to, or in fact did, compromise the government's prosecution of either Radulovich or Woodard.

■ The government invites us to review the record as a whole, *see Reed,* 88 F.3d at 180–81 (looking to the "record as a whole" to determine whether the district court's findings are "supportable"), and to consider the court's finding of intent in light of the PSR and the government's own statements on the record of the sentencing hearing:

(A) As to the PSR, it says that Woodard "jumped bail as he failed to

appear in Court and a bench warrant was issued on March 3, 1999." The probation report was mistaken. As the government concedes, Woodard had not "failed to appear in Court." And as he had not failed to appear, he did not commit the offense colloquially known as "bail jumping." That offense is specified in 18 U.S.C. § 3146 and provides, in pertinent part, for the punishment of one who, "having been released under this chapter knowingly (i) fails to appear before a court as required by the conditions of release." Thus, to the extent the sentencing court may have believed, following the PSR, that Woodard had committed the crime of bail jumping, it was mistaken. More importantly, however, the two-level increase imposed by § 3C1.1 for Obstructing or Impeding the Administration of Justice applies only to a defendant who "*willfully* obstructed or impeded, or attempted to obstruct or impede the administration of justice. . . ." U.S.S.G. § 3C1.1 (emphasis added). The government has cited no case, and we can find none, holding that disobedience of a condition of release can serve as a factual predicate for the obstruction of justice enhancement unless the defendant intended by such action "to obstruct or impede the administration of justice." *Id.* The only application note to § 3C1.1 that has any conceivable bearing on this case suggests a much stiffer requirement for finding obstruction: that the defendant "willfully fail[ed] to appear, as ordered, for a judicial proceeding." U.S.S.G. § 3C1.1, appl. n. 4(e).

(B) Similarly, the government's conclusory statements during the sentencing hearing that Woodard's conduct impeded its investigation are cited without adoptive findings by the district court, and cannot support imposition of the enhancement. *Cf. Bradbury,* 189 F.3d at 205 ("the district court's adoption of the 1998 PSR's conclusory statements describing [defendant's] alleged obstruc-

tion cannot save the § 3C1.1 enhancement").

■ Finally, this is not a case in which Woodard's conduct was "inherently obstructive." It is not self-evident that Woodard acted with the specific intent to obstruct or impede the administration of justice. Unlike *United States v. Aponte,* 31 F.3d 86, 88 (2d Cir.1994), where we held that "[i]t [was] sufficient . . . that the defendant intended to fail to appear at a judicial proceeding, regardless of his reason for desiring to flee," the district court here made no reviewable finding that Woodard fled the jurisdiction with the intent of interfering with a judicial proceeding or obstructing justice in any other way.

## CONCLUSION

The district court made insufficient factual findings to support an enhancement for obstruction of justice under § 3C1.1. Accordingly, we vacate the sentence and remand for re-sentencing. The district court may if it chooses allow expansion of the record and undertake additional fact-finding.