UNITED STATES of America,
Appellee,

v.

Enrique CARTY, Defendant–Appellant.

Docket Nos. 00–1785(L), 00–1786.

United States Court of Appeals,
Second Circuit.

Argued Aug. 9, 2001.

Decided Sept. 5, 2001.

Geoffrey S. Stewart, New York, NY, for appellant.

David C. Esseks (Jamie L. Kogan, on the brief), Assistant United States Attorneys, for Mary Jo White, United States Attorney, S.D.N.Y ., for appellee.

Before MINER, JACOBS, and CALABRESI, Circuit Judges.

PER CURIAM:

On November 28, 1995, Enrique Carty pled guilty in the Southern District of New York to two counts of a New York information charging conspiracy to distribute and possess with intent to distribute over five kilograms of cocaine and over one hundred grams of heroin, in violation of 21 U.S.C. § 846. On the same day he pled guilty to one count of an indictment out of the Western District of North Carolina charging conspiracy to distribute and possess with intent to distribute a quantity of cocaine base, in violation of 21 U.S.C. §§ 812, 841(a)(1).[1] He appeals only his sentence, contending that the district court (Schwartz, J.) erred in imposing an obstruction of justice enhancement under U.S.S.G. § 3C1.1 and in declining to depart downward on the basis of conditions of confinement he suffered while incarcerated in the Dominican Republic awaiting

---

1. This indictment was originally filed in the Western District of North Carolina, but was transferred to the Southern District of New York pursuant to Fed.R.Crim.P. 20.

extradition to the United States. We hold that the district court did not err in imposing the enhancement for obstruction of justice, but vacate the sentence and remand so that the court can reconsider the defendant's request for a downward departure for pre-sentence conditions of confinement.

## BACKGROUND

Carty entered his guilty pleas under an agreement with the United States Attorney for the Southern District of New York, pursuant to which he promised to cooperate in the investigation and prosecution of other individuals. The agreement required Carty to "cooperate fully with this office [and] the Drug Enforcement Administration" ("D.E.A.") and to "attend all meetings at which this office requests his presence." In exchange, the Government stated that it would file a substantial assistance motion pursuant to U.S.S.G. § 5K1.1 at sentencing, and that it would not object to Carty's release on bail subject to a number of specified conditions of release, including a prohibition on travel beyond the Southern and Eastern Districts of New York, and an order to remain in contact with his supervising agent. At the conclusion of Carty's guilty plea, Judge Schwartz ordered Carty released subject to these agreed-upon conditions.

Following his release on bail, Carty assisted the D.E.A. in a number of investigations. In April 1998, the agent in charge of the investigation on which Carty was then working discovered that Carty was not returning his pages, and sent an agent to Carty's residence. Carty's family informed the agent that Carty was in the Dominican Republic, and provided a cellular telephone number at which he could be reached. The agent called Carty, who claimed to have traveled to the Dominican Republic to visit an ill family member. He said he would return to New York shortly. At the end of April, the agent again called Carty in the Dominican Republic. Carty stated that he was waiting for friends to help him finance his trip back to New York. Subsequently, the D.E.A. agents found that both Carty's cellular telephone number and the telephone number of Carty's family in New York had been disconnected.

On July 18, 1998, the District Court issued a warrant for Carty's arrest. On May 14, 1999, Carty was detained pursuant to that warrant at the airport in Santo Domingo, Dominican Republic, while attempting to travel to another island. Carty was held in a Dominican prison until February 5, 2000, when he was extradited to the United States for sentencing. Carty alleges that during that period he was subjected to cruel prison conditions. He was held in a four-foot by eight-foot cell with three or four other inmates. There was no light in his cell. He received ten to fifteen minutes per day outside of his cell to bathe and was allowed to make only one phone call per week. He had no running water in his cell. His only toilet was a hole in the ground. He was denied access to paper, pens, newspaper, and radio. While incarcerated in the Dominican Republic, he lost forty pounds.

On November 27, 2000, after having been returned to the United States, Carty was sentenced by the District Court. Judge Schwartz enhanced Carty's offense level by two points for obstruction of justice. With respect to this enhancement, Judge Schwartz found:

> The conclusion is inevitable that the defendant fled, that is, he escaped or attempted to escape from custody before trial or sentencing. He willfully failed to appear. He did so in the face of what is now a clear and overwhelming record that he had no justification for doing so,

because the DEA agent who spoke to him by telephone, in effect, said that they were looking for him. And that he was to return.

And Mr. Carty said that he would return. But he didn't. He didn't return until he was apprehended, until he was incarcerated, and then ordered and directed to be and, in fact, returned by the government of the Dominican Republic.

Under those circumstances, I find [it] inevitable that he has obstructed justice. And he is, therefore, to be subject to the two-level obstruction of justice enhancement.

The District Court also rejected Carty's request, based on the conditions of his confinement in the Dominican Republic, for a downward departure. In ruling on that motion, the court stated:

[U]nder no circumstance is Mr. Carty, who went voluntarily to his own country, entitled to a downward departure because the prison conditions in the Dominican Republic were such that Mr. Carty was affected adversely. That is, that he [endured] deplorable conditions at the jail in the Dominican Republic.

Mr. Carty was imprisoned in his own country in what I would have to assume are the standard conditions of confinement in that country. And I am not aware of any case or authority that would hold that as a matter of law, he is entitled to a downward departure where he returned voluntarily to his own country, was apprehended by his own government, incarcerated in their prisons, and now claims that their substandard penal practices give[ ] him some benefit under our law. I don't believe that is the law, nor should it be the law. And I don't believe a downward departure is warranted.

The court concluded by sentencing Carty to 290 months' imprisonment. Carty filed a timely Notice of Appeal.

## DISCUSSION

### Obstruction of Justice

 Carty argues that the district court erred by imposing an obstruction of justice enhancement pursuant to Sentencing Guideline § 3C1.1 without making the requisite finding that he had the "specific intent to obstruct justice, i.e., that [he] consciously acted with the purpose of obstructing justice." *United States v. Woodard,* 239 F.3d 159, 162 (2d Cir.2001) (quotation marks omitted). The Sentencing Guidelines provide for a two-level offense level enhancement if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. We have held that in order to apply this enhancement the district court must make a finding that the defendant had a "specific intent to obstruct justice." *Woodard,* 239 F.3d at 162 (quotation marks omitted); *see also United States v. Bradbury,* 189 F.3d 200, 204 (2d Cir.1999); *United States v. Zagari,* 111 F.3d 307, 328 (2d Cir.1997). In determining the intent with which a defendant acted, the district court is entitled to rely on circumstantial evidence and on all the reasonable inferences that may be drawn from the evidence. *See United States v. Cassiliano,* 137 F.3d 742, 747 (2d Cir. 1998). The facts necessary to support an obstruction of justice enhancement need to be proven only by a preponderance of the evidence. *See id.*

The sentencing court found that Carty willfully fled to the Dominican Republic and remained there in order to avoid sentencing. "The conclusion is inevitable," it stated, "that the defendant fled, that is, he

escaped or attempted to escape from custody before trial or sentencing. He willfully failed to appear." Such a finding is sufficient to meet the standard articulated in this Circuit. Our cases have held that a willful avoidance of a required judicial proceeding such as sentencing is inherently obstructive of justice. *See, e.g., United States v. Reed,* 88 F.3d 174, 178 (2d Cir. 1996) ("[C]ertain conduct, such as intentionally failing to appear as required at judicial proceedings, is so inherently obstructive of the administration of justice that it is sufficient that the defendant wilfully engaged in the underlying conduct, regardless of any additional purpose."); *United States v. Labella–Szuba,* 92 F.3d 136, 139 (2d Cir.1996). In the particular circumstances of this case, the district court's finding that the defendant fled to and remained in the Dominican Republic in order to avoid sentencing is therefore equivalent to a finding that he acted with the specific intent to obstruct justice, and suffices to establish that state of mind, whether or not the court used the precise words "intent to obstruct justice."

The defendant relies heavily on our recent decision in *Woodard,* but *Woodard* is distinguishable. The defendant in *Woodard,* while out on bail pursuant to a cooperation agreement with the United States Attorney's Office, violated his release conditions by traveling to Pennsylvania, where he was jailed for an unrelated offense. The district court imposed an obstruction of justice enhancement upon finding that the defendant purposely left the jurisdiction in violation of his plea agreement. On appeal we overturned the enhancement because the sentencing court had made no finding that Woodard had acted with the specific intent to obstruct justice. "The district court found that Woodard 'willfully went to Pennsylvania, he w[ent] knowingly and willfully'; but the question that needs an answer is whether Woodard left the

jurisdiction ... with the specific intent to 'obstruct[ ] or impede[ ] ... the administration of justice.'" *Woodard,* 239 F.3d at 162 (alterations in original). We concluded, moreover, that there was no basis in the record to support a finding that Woodard's trip to Pennsylvania was intended to obstruct justice. *See id.*

■ In the instant case, instead, the district court specifically found that Carty *fled to and remained in* the Dominican Republic *in order to avoid sentencing.* This finding is amply supported in the record by evidence (1) that Carty did not return to the United States after being ordered to do so by a D.E.A. agent, (2) that Carty's phone numbers were disconnected after he spoke to the agent, and (3) that, after indicating that he was seeking to raise money to come back to the United States, Carty was arrested while attempting to take off for another island. In contrast, the defendant in *Woodard* was not ordered to return by the government and, unlike Carty, was prevented from returning by the fact of his incarceration.

Carty points out that, like Woodard, he "never had an official court appearance date set at which he failed to appear." This is true, but irrelevant. In view of the district court's finding that Carty fled and remained away intentionally to avoid being sentenced for his crimes, it was unnecessary for the court to find that Carty had actually missed a scheduled court date. *See* U.S.S.G. § 3C1.1 (obstruction of justice enhancement applies if "the defendant willfully obstructed or impeded, or *attempted to obstruct or impede,* the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." (emphasis added)).

We conclude that the district court did not err in imposing a two-level sentencing

enhancement pursuant to U.S.S.G. § 3C1.1.

*Conditions of Confinement Departure*

■ Carty also contends that his sentence should be vacated and the case remanded to the district court because that court incorrectly believed that it lacked authority to grant a downward departure based on the conditions of Carty's confinement in the Dominican Republic. The court stated at sentencing that "under no circumstance is Mr. Carty, who went voluntarily to his own country, entitled to a downward departure because the prison conditions were such that Mr. Carty was affected adversely." The court also stated: "I am not aware of any case or authority that would hold that as a matter of law, he is entitled to a downward departure where he returned voluntarily to his own country, was apprehended by his own government, incarcerated in their prisons, and now claims that their substandard penal practices give[ ] him some benefit under our law."

We agree with the defendant that the court may have misapprehended its authority in this case. The court's use of the phrase "under no circumstance" suggests that the court may have believed that presentence conditions of confinement-at least when such confinement occurs in a defendant's "own" country—can *never* serve as the basis for a downward departure. This is not correct. The Sentencing Commission has not categorically proscribed consideration of this factor, and we cannot say that conditions of pre-sentence confinement may not be so severe as to take a particular case "outside the heartland of the applicable Guideline." *Koon v. United States,* 518 U.S. 81, 109, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

■ According to the Sentencing Guideline Manual, a sentencing court may depart if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). No evidence exists to show that the Sentencing Commission took the conditions of a pre-sentence detainee's confinement into account in creating the Guidelines. Indeed, there is no indication that the Commission contemplated that federal pre-sentence detainees would be kept in any detention facilities other than federal facilities. *See United States v. Francis,* 129 F.Supp.2d 612, 616 (S.D.N.Y. 2001). Accordingly, we hold today that pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures.

The government, correctly, points out that there is a "strong presumption" that "district judges understand the much-discussed processes by which they may, in circumstances permitted by law, exercise discretion to depart from the sentencing range prescribed by the Guidelines calculus." *United States v. Brown,* 98 F.3d 690, 694 (2d Cir.1996). But this presumption itself rests on the assumption that the sentencing court's legal authority to depart is adequately clear when the court acts. Because until today, this Circuit had not spoken directly on the issue of pre-sentence confinement conditions, and because there is no consensus amongst the other circuits and the lower courts establishing a district court's right to depart in appropriate circumstances, *see Francis,* 129 F.Supp.2d at 615 ("[N]o clear consensus exists as to the propriety of granting a downward departure for conditions of pre-trial confinement."), we cannot be certain whether the district court chose not to depart based on the facts before it, or believed itself precluded from considering a departure regardless of those facts.

Under the circumstances prudence dictates that we VACATE the sentence and REMAND so that the district court can reconsider the defendant's request for a downward departure, and do so in the light of this holding.