14-4430-cr
*United States v. Rodriguez*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of June, two thousand sixteen.

Present:
>PETER W. HALL,
>GERARD E. LYNCH,
>DENNY CHIN,
>>*Circuit Judges.*

_____

UNITED STATES OF AMERICA,

>*Appellee*,

>>v.                                                          No. 14-4430-cr

RAPHAEL RODRIGUEZ,

>*Defendant-Appellant.*

_____

For Appellee:            MARGARET E. GANDY (Emily Berger, of counsel), Assistant United States Attorneys, *for* Robert L. Capers, United States Attorney for the Eastern District of New York, Brooklyn, NY.

For Defendant-Appellant:  KELLEY J. SHARKEY, Brooklyn, NY.
_____

Appeal from a judgment of the United States District Court for the Eastern District of

New York (Korman, *J.*).

1

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment is **AFFIRMED**.

Defendant-Appellant Raphael Rodriguez was convicted by a jury of assault within the special maritime and territorial jurisdiction of the United States in violation of 18 U.S.C. § 113(a)(6). Rodriguez, formerly an inmate at the Metropolitan Detention Center in Brooklyn, punched fellow inmate Brian Bartels in the face a single time. Bartels fell backwards and struck his head on the floor; he later died of his injuries. On June 19, 2014, Rodriguez was sentenced to seven years' imprisonment, to run consecutively to the 235-month sentence he is serving for a separate offense.

On appeal, Rodriguez contends that (1) the district court abused its discretion by precluding the defense expert, Dr. Sasha Bardey, from testifying regarding Rodriguez's hearsay account of the assault; (2) the district court's jury instruction on self-defense was confusing to the jury and improperly shifted the burden of proof to the defense; and (3) the sentence was excessively harsh.

## 1. Exclusion of Rodriguez's Hearsay Statements through the Expert's Testimony

Rodriguez asserts the court abused its discretion by precluding Dr. Bardey from testifying that, in forming his expert opinion, he relied on Rodriguez's statements that, prior to the incident, (1) Bartels was clenching his fists and (2) Rodriguez felt threatened. Rodriguez argues that these statements were central to his claim at trial that he acted in self-defense. We review for abuse of discretion the district court's rulings on admissibility of evidence. *United States v. Jones*, 299 F.3d 103, 112 (2d Cir. 2002). "Because the district court has 'broad discretion regarding the admission of expert testimony,'" we will affirm the district court's ruling "unless it was 'manifestly erroneous.'" *United States v. Dukagjini*, 326 F.3d 45, 52 (2d Cir. 2003) (quoting *United States v. Locascio*, 6 F.3d 924, 936 (2d Cir.1993)). An expert witness may offer opinion

2

testimony to the jury if his "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). An expert may base his opinion on facts that are otherwise inadmissible, such as hearsay that does not fall within a recognized exception, if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. The expert may disclose those facts to the jury "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id.*

The district court did not abuse its discretion by excluding the two challenged hearsay statements. The court determined that Rodriguez's statements to Dr. Bardey, which were made in preparation for trial, were unreliable because he was an interested witness with "a clear motive to lie." G.A. 22. Further, the statements were unsworn and there was no opportunity for cross-examination because Rodriguez did not testify at trial. Although an expert may "rely on hearsay evidence for the purposes of rendering an opinion based on his expertise, . . . there is a significant risk that, if the witness digresses from his expertise, he will be improperly relying upon hearsay evidence and may convey hearsay to the jury." *Dukagjini*, 326 F.3d at 59. It is not clear what if anything the proffered hearsay statements about the events surrounding the assault on Bartels would add to the jury's understanding of Dr. Bardey's expert opinion that Rodriguez suffered from Post-Traumatic Stress Disorder stemming from traumatic incidents in his childhood. The district court recognized that the jury would rely on the hearsay testimony for its truth and the expert would be "repeating hearsay evidence without applying any expertise whatsoever, thereby enabling the [defendant] to circumvent the rules prohibiting hearsay." *Id.*

Rodriguez asserts that his hearsay statements to Dr. Bardey were nonetheless admissible because they were corroborated by his own, almost identical, statements to a Bureau of Prisons ("BOP") investigator soon after the incident. The court did not abuse its discretion in concluding

that these earlier statements were equally unreliable, as Rodriguez knew he was speaking to a criminal investigator and thus had a "motive not to testify truthfully." J.A. 55. Rodriguez further contends that the interests of justice favored admission of the statements under Rule 703 because the government did not indict him until more than three years after Bartels's death and the BOP failed to preserve surveillance footage of the hours leading up the offense, hampering his ability to put on a defense. The record makes clear, however, that the district court gave thoughtful consideration to the equities by admitting a number of other hearsay statements it had been inclined to exclude. Through Dr. Bardey's testimony, the jury heard Rodriguez's statements that (1) he was arguing with Bartels over a gambling debt, (2) Bartels was confrontational, and (3) during their exchange, Bartels left to change into sneakers, which Rodriguez interpreted to mean he was willing to fight. Dr. Bardey was also permitted to testify as to hearsay statements from other witnesses, including a BOP officer and Bartels's cellmate, who corroborated Rodriguez's statements.[1]

## 2.    Jury Instruction on Self-Defense

Rodriguez also contends that the district court erroneously instructed the jury on his self-defense claim. Since Rodriguez did not object below, we review his claim for plain error. *United States v. Tannenbaum*, 934 F.2d 8, 14 (2d Cir. 1991). "Objectionable instructions are considered in the context of the entire jury charge, and reversal is required where, based on a review of the record as a whole, the error was prejudicial or the charge was highly confusing." *United States v. Kopstein*, 759 F.3d 168, 172 (2d Cir. 2014) (internal quotation marks omitted).

---

[1] In any event, Rodriguez was not materially prejudiced by the district court's exclusion of his hearsay statements. Dr. Bardey conveyed to the jury the essence of Rodriguez's statements—that he felt threatened by Bartels—stating: "As a result of the gambling debt, the words that occurred between them, the situation as Mr. Rodriguez understood it to be, led him to feel acutely threatened." G.A. 80.

4

During the jury charge, the district court read the instructions to the jury and provided copies of the written instructions for the jury to follow along and use in its deliberations. Rodriguez does not challenge the written instructions; rather, he asserts that in the court's oral charge, "the burden of proof was initially charged correctly, but the instruction was immediately undermined by an inconsistent instruction." Appellant's Br. 28. In its oral charge, the district court misread one sentence of the jury charge, stating:

> The Government is required to prove beyond a reasonable doubt that the defendant was not justified. It is thus an element of the charged offense that the defendant was not justified. As a result, if you find the *defendant* has failed to prove beyond a reasonable doubt that the defendant was not justified, then you must find the defendant not guilty.

J.A. 295 (emphasis added). As Rodriguez concedes, however, the written charge contained the proper legal standard:

> The Government is required to prove beyond a reasonable doubt that the defendant was not justified. It is thus an element of the charged offense that the defendant was not justified. As a result, if you find that the *Government* has failed to prove beyond a reasonable doubt that the defendant was not justified, then you must find the defendant not guilty.

J.A. 304 (emphasis added).

Although the court made an error in its reading of the jury instructions, we cannot say that the error was "plain and affect[ed] [his] substantial rights." *United States v. Goldstein*, 442 F.3d 777, 781 (2d Cir. 2006). Rodriguez relies on our decision in *Kopstein*, but we vacated the defendant's conviction in that case because the "initial jury instructions [were] faulty, the jury expresse[d] confusion, and the court's supplemental instruction fail[ed] to alleviate the jury's concerns or only add[ed] to the already-existing confusion." *Kopstein*, 759 F.3d at 172. In this case, there is no indication that the jurors were confused by the court's misreading of the instruction. The jury was able to follow along from the correct written instructions during the

5

oral charge, and it had access to those written instructions during its deliberations.  Both the oral charge and written instructions emphasized, moreover, that the government retained the burden of proof at all times.  These safeguards mitigated any risk of confusion, and the error did not affect Rodriguez's substantial rights.

### 3. Sentencing Issues

Finally, Rodriguez argues that his sentence of seven years, to run consecutively to the sentence he is already serving, is unnecessarily harsh and thus substantively unreasonable.  "A sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime."  *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (en banc).  We will "set aside a district court's substantive determination only in exceptional cases where the trial court's decision 'cannot be located within the range of permissible decisions.'"  *Id.* at 189 (emphasis omitted) (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)).   We conclude that the sentence was substantively reasonable.

Rodriguez contends that the district did not adequately consider the tragic conditions of his childhood, which resulted in severe, life-long psychiatric problems.  He further argues that the excessively harsh conditions of his confinement at ADX Florence, a Super Max prison for inmates in administrative segregation, warrants a lesser sentence. *See United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001) (recognizing that harsh conditions of imprisonment can provide basis for sentencing departure).  Rodriguez also emphasizes the fact that Bartels's death, while unfortunate, was effectively an accident caused by his fall to the concrete floor.  While these factors warrant consideration in Rodriguez's favor, the record indicates that the district court not only thoroughly considered them, but it relied on these factors as the basis for imposing a sentence below the Guidelines range of 100 to 120 months.  In light of the district court's

6

thoughtful consideration of the § 3553(a) factors, we cannot say that the sentence "was

shockingly high, . . . or otherwise unsupportable as a matter of law." *Rigas*, 583 F.3d at 123.

For these reasons, the judgment is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK