*United States v. Harris*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of January, two thousand twenty-five.

PRESENT:

        RICHARD J. SULLIVAN,
        STEVEN J. MENASHI,
        MARIA ARAÚJO KAHN,
           *Circuit Judges.*

———————————————————————

UNITED STATES OF AMERICA,

        *Appellee*,

        v.                                  No. 23-6811

ANTHONY HARRIS,

        *Defendant-Appellant*.

———————————————————————

| | |
|---|---|
| **For Defendant-Appellant:** | JONATHAN J. EINHORN, New Haven, CT. |
| **For Appellee:** | CONOR M. REARDON (Nathaniel J. Gentile, Sandra S. Glover, *on the brief*), Assistant United States Attorneys, *for* Vanessa Roberts Avery, United States Attorney for the District of Connecticut, New Haven, CT. |

Appeal from a judgment of the United States District Court for the District of Connecticut (Jeffrey A. Meyer, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the July 18, 2023 judgment of the district court is **AFFIRMED**.

Anthony Harris appeals from a judgment of conviction following a jury trial in which he was found guilty of four counts of possession with intent to distribute and distribution of oxycodone, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). On appeal, Harris argues that the district court erred at sentencing by applying an enhancement for obstruction of justice pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3C1.1 and by failing to grant a downward departure under U.S.S.G. § 5H1.4 in light of his sickle-cell disease. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

In June 2020, the Drug Enforcement Agency ("DEA") began investigating Harris for selling oxycodone pills – which a doctor prescribed to help him manage his sickle-cell disease – to his acquaintance James Myers. On September 2, 2020, DEA agents stopped Harris and Myers in their cars near Myers's home, at which time the agents seized 220 oxycodone pills from Myers and 32 oxycodone pills, $4,400 in cash banded together, and a cellphone from Harris. Although both men were detained, and Myers admitted to having purchased the pills for $20 each from Harris moments earlier, neither was arrested or charged at that time. Several months later, on November 29, 2020, Harris wrote a letter to the DEA requesting the return of his seized possessions and claiming, among other things, that he did not know why the DEA had stopped him and taken his property. He stated that the money seized from him was payment for a flooring job performed the day before, and he attached a handwritten invoice purporting to reflect that he had received a $4,500 payment for the job.

At sentencing, the district court found that the representations in the letter and invoice were "clearly false" and applied a two-point enhancement for obstruction of justice under U.S.S.G. § 3C.1.1. App'x at 68–69. The district court ultimately sentenced Harris to 60 months' imprisonment, well below its calculated

3

Guidelines range of 97 to 121 months.[1]   The district court stated that Harris's

sickle-cell anemia was "a major reason" for the below-Guidelines sentence, and

expressly noted that it had taken the effects of the disease "fully into account" in

determining his sentence.   *Id.* at 127.

## I.   Obstruction-of-Justice Enhancement

Harris first disputes the district court's imposition of the two-level

enhancement under U.S.S.G. § 3C1.1 for the fraudulent letter and invoice he sent

to the DEA.   Section 3C1.1 provides for a two-level enhancement where a

defendant "willfully obstructed or impeded, or attempted to obstruct or impede,

the administration of justice with respect to the investigation . . . of the instant

offense of conviction."   U.S.S.G. § 3C1.1.   This enhancement applies to a range of

conduct, *see* U.S.S.G. § 3C1.1 cmt. n.4(A)–(K), including "producing or attempting

to produce a false, altered, or counterfeit document or record during an official

investigation," U.S.S.G. § 3C1.1 cmt. n.4(C).   We review the application of the

obstruction-of-justice enhancement under a mixed standard of review.   *See United*

*States v. Brown*, 321 F.3d 347, 351 (2d Cir. 2003).   We accept a district court's factual

---

[1] While the advisory Guidelines range at the time of Harris's sentencing was 121 to 151 months, the parties agreed that a range of 97 to 121 months' imprisonment appropriately accounted for the then-anticipated amendment to U.S.S.G. § 4C1.1, which would have retroactively applied to Harris's sentence.

findings unless they are clearly erroneous, but we review *de novo* the district court's ruling that those facts constitute obstruction under the Guidelines. *See United States v. Gershman*, 31 F.4th 80, 102 (2d Cir. 2022).

Harris now concedes that the letter and invoice were "obviously fraudulent." Harris Br. at 11. He nevertheless contends that he could not have "willfully" obstructed justice because, at the time he wrote the letter, he was unaware of any pending law enforcement investigation and merely wanted to recover his possessions. He also argues that the district court erred by failing to make a finding with respect to whether his false documents to the DEA were material. We disagree.

In the context of section 3C1.1, to act willfully means that "the defendant consciously acted with the purpose of obstructing justice." *United States v. Woodard*, 239 F.3d 159, 162 (2d Cir. 2001) (internal quotation marks omitted). Based on the record below, we perceive no error, much less clear error, in the district court's findings that Harris "knew of [the DEA's] investigation" and "furnish[ed]" a "clearly false" "document to the DEA . . . with an intent to obstruct [that] investigation." App'x at 68–69. At the time Harris sent his letter and phony invoice to the DEA, several months had passed since he had been stopped

by DEA agents immediately after completing a drug transaction. As part of that stop, the agents had seized drug proceeds, oxycodone pills, and a phone – all potentially incriminating evidence – which they did not return to Harris. As the district court observed, given this sequence of events, it "would have been self-evident" to Harris that he was the subject of a criminal investigation and that the items seized from him were evidence in that investigation. *Id.* at 56–57. The district court's findings that Harris knowingly sent false documents to the DEA in an attempt to explain away and re-acquire evidence of his crimes was more than sufficient to establish his intent to obstruct justice. *See United States v. Bonds*, 933 F.2d 152, 155 (2d Cir. 1991) ("Documents . . . are not normally altered or fabricated; thus, alteration of documents is itself evidence of an intent to deceive[.]"); *see also United States v. Oehne*, 698 F.3d 119, 121 (2d Cir. 2012) (explaining that, under the clear error standard, an appeals court "may not reverse" "the district court's account of the evidence [if it] is plausible in light of the record viewed in its entirety" (internal quotation marks omitted)).

Harris next contends that the district court erred by failing to make a finding that his letter and invoice "materially impeded" the DEA's investigation. *Gershman*, 31 F.4th at 103 ("An obstruction of justice enhancement only applies if

6

the court finds that the defendant willfully and materially impeded the search for justice in the instant offense." (internal quotation marks omitted)). Because Harris did not raise this objection below, we review it for plain error. *See United States v. Rainford*, 110 F.4th 455, 478 (2d Cir. 2024). Therefore, Harris can only prevail on this argument if he "demonstrate[s] that (1) there was error, (2) the error was plain, (3) the error prejudicially affected his substantial rights, and (4) the error seriously affected the fairness, integrity[,] or public reputation of judicial proceedings." *United States v. Burden*, 860 F.3d 45, 53 (2d Cir. 2017) (internal quotation marks omitted).

The district court did not plainly err here. To begin, as the government points out, this Court has never expressly held that a district court must make a finding of materiality before applying an obstruction-of-justice enhancement when a defendant "produc[es] . . . a false . . . document or record during an official investigation." U.S.S.G. § 3C1.1 cmt. n.4(C). That is hardly surprising, since part (C) of application note 4, in contrast to other types of obstructive conduct listed in the Guidelines commentary, does not require that the false document be "*materially* false." *Compare* U.S.S.G. § 3C1.1 cmt. n.4(C) (omitting any reference to the term "material"), *with* U.S.S.G. § 3C1.1 cmt. n.4(F), (H) (listing, "as examples of

7

the types of conduct to which th[e] obstruction] adjustment applies, "providing" "materially false information" to judges and "probation officer[s] in respect to a presentence or other investigation for the court"), *and* U.S.S.G. § 3C1.1 cmt. n.4(G) (listing, as an example, "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense"); *see also United States v. Shannahan*, 135 F. App'x 253, 259–60 (11th Cir. 2005) (concluding that application note 4(C) has no materiality requirement); *United States v. Gonzalez*, 644 F. App'x 456, 464 (6th Cir. 2016) (same). At a minimum, the invoice that Harris sent to the DEA was a "false" document "produc[ed]" "during an official investigation," as contemplated by part (C) of application note 4.

To be sure, our precedent has at times spoken broadly when discussing the obstruction-of-justice enhancement. *See United States v. Zagari*, 111 F.3d 307, 328 (2d Cir. 1997) (citing application note 3(D), (F)–(H) to observe that "[a]pplication of § 3C1.1 generally requires findings of willfulness and materiality" and concluding that "an enhancement for obstruction of justice may therefore be granted if the court finds that the defendant willfully and materially impeded the search for justice in the instant offense"); *Gershman*, 31 F.4th at 103–05 (applying a

materiality requirement to conduct covered by application note 4(A), which identifies "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror" without any reference to materiality). But since neither *Zagari* nor *Gershman* involved an application of the enhancement to a false document produced during an official investigation, neither case provides a holding regarding the requirements of application note 4(C) and thus cannot support a finding of plain error here. *See United States v. Whab*, 355 F.3d 155, 158 (2d Cir. 2004) ("For an error to be plain, it must, at a minimum, be clear under current law. We typically will not find such error where the operative legal question is unsettled, including where there is no binding precedent from the Supreme Court or this Court." (internal quotation marks and citation omitted)).

In any event, the district court at sentencing effectively made a materiality finding when it adopted the government's position that the "reason that [Harris] wrote to the DEA" was to recover "evidence in a potential drug case against him," App'x at 55–56, and went on to explain that Harris's sending of false documents "to the DEA was obviously an effort to falsely disclaim that the money that was seized was drug money," *id.* at 124. In other words, Harris's letter and invoice attempted to provide an innocent explanation for the drug proceeds found in his

9

possession and to recover key evidence in the DEA's investigation against him. "[I]f believed," the letter and invoice clearly would have "tend[ed] to influence or affect" the DEA's understanding of Harris's conduct on September 2, 2020, which was later charged as count five in the indictment. *United States v. Strange*, 65 F.4th 86, 90 (2d Cir. 2023) (quoting U.S.S.G. § 3C1.1 cmt. n.6's definition of materiality); *see also Gershman*, 31 F.4th at 103–04 ("Section 3C1.1 establishes no general requirement that the obstruction succeed." (internal quotation marks omitted)).

Harris himself offers no argument on appeal that his submission of false documents to the DEA fell below the "conspicuously low" "threshold for materiality." *Gershman*, 31 F.4th at 103 (internal quotation marks omitted). Nor does he explain how, given the obvious nature of materiality here, the district court's analysis prejudicially affected his substantial rights or in any way affected the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Dussard*, 967 F.3d 149, 156 (2d Cir. 2020) ("The burden is on the [defendant] to meet [the plain-error] standard."). For all of these reasons, we decline to find plain error on this ground.

## II. Departure Under U.S.S.G. § 5H1.4

Harris also argues that the district court erred by not granting a downward departure under U.S.S.G. § 5H1.4, which allows for departures based on a defendant's "extraordinary physical impairment," on account of his sickle-cell disease. But "a district court's decision not to depart from the Guidelines is generally unreviewable, unless it misunderstood its authority to do so." *United States v. Robinson*, 799 F.3d 196, 201 (2d Cir. 2015). Harris makes no argument that such a misunderstanding occurred here, and "[i]n the absence of clear evidence of a substantial risk that the judge misapprehended the scope of his departure authority, we presume that a sentenc[ing] judge understood the scope of [that] authority." *Id.* (internal quotation marks omitted).

In any event, the record makes clear that the district court carefully considered Harris's sickle-cell disease before giving him a well-below Guidelines sentence – that is, varying downwards based on the factors set forth in 18 U.S.C. § 3553(a), exactly as Harris had requested. We therefore reject Harris's suggestion that the district court plainly erred by declining to *sua sponte* consider and apply a downward departure in addition to the variance reflected in Harris's below-Guidelines sentence. *See United States v. Canova*, 412 F.3d 331, 358 n.28 (2d

Cir. 2005); *see also United States v. Jordan*, No. 23-6163, 2024 WL 2764399, at *2 (2d Cir. May 30, 2024) (explaining that a "district court ha[s] no obligation to consider every conceivable ground for a departure" before relying on the facts that could form the basis for such departure to impose a non-Guidelines sentence).

We have considered Harris's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court