24-2041-cr
*United States v. Belmar*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of December, two thousand twenty-five.

PRESENT:
> BETH ROBINSON,
> SARAH A. L. MERRIAM,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                                 No. 24-2041-cr

JOSEPH BELMAR,

> *Defendant-Appellant.*

_____

FOR APPELLEE:                                    JAMES LIGTENBERG, Assistant United
                                                 States Attorney (Stephanie Simon,

Assistant United States Attorney, *on the brief*) *for* Jay Clayton, United States Attorney for the Southern District of New York, New York, NY.

FOR DEFENDANT APPELLANT: SARAH KUNSTLER, Law Office of Sarah Kunstler, Brooklyn, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Wood, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's judgment of conviction entered on July 23, 2024, is **AFFIRMED,** and the sentence is **VACATED** and **REMANDED** for resentencing consistent with this order.

Defendant-Appellant Joseph Belmar appeals from a judgment of the United States District Court for the Southern District of New York (Kimba Wood, *District Judge*) sentencing him principally to 108 months of imprisonment, to be followed by three years of supervised release. Belmar pled guilty to one count of possession of a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). On appeal, Belmar challenges his sentence only. He contends that the court erred by failing to hold a hearing to determine whether counsel had violated his Sixth Amendment rights and challenges the district court's calculation

of the recommended sentencing range under the Sentencing Guidelines. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

All of Belmar's challenges arise from the same constellation of facts. After the plea, and prior to sentencing, the district court held a *Fatico* hearing to resolve factual disputes relating to the Sentencing Guidelines calculation. *See United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979). Consistent with the *Pimentel* letter the government provided Belmar before he pled guilty without a plea agreement, **[A19]** the government argued that Belmar's base offense level should be 33 pursuant to U.S.S.G. §§ 2X1.1(a), 2X1.1(c)(1), and 2A2.1(a)(1) because he used the firearm in an attempt to commit first-degree murder. At the hearing, an officer testified that he saw Belmar fire a gun multiple times toward a group of males ten to fifteen feet away. When Belmar stopped firing the gun and ran, the officer chased him, keeping Belmar in his sight until he apprehended Belmar. Along the way, Belmar dropped the gun on the ground, and the officer picked it up. Defense counsel argued that Belmar did not intend to kill anyone but was firing the gun at rival gang members to "send a message." App'x 161.

Following the hearing, and over the course of the next several months, Belmar personally sent a series of handwritten submissions to the court in which he raised a variety of issues and asserted his innocence. In one, which he signed "under penalties of perjury," App'x 173, Belmar wrote that he had been "persuaded" by his previously appointed lawyer (the court appointed a new lawyer for Belmar after he pled guilty) "into admitting the gun was his" and that "nobody g[a]ve Mr. Belmar a gun [and] he didn't want to admit that the gun was his." App'x 172. In another communication, captioned by Belmar as a "Motion to Dismiss the Indictment" and again signed with a statement asserting it was subject to the penalties of perjury, Belmar reiterated that he "was persuaded by [his prior lawyer] into admitting that the gun was his." App'x 232-34. He went on to challenge the sufficiency of the evidence identifying him as the shooter, the lawfulness of the government's purported consent search of the iPhone seized from Belmar when he was apprehended, and the credibility of the officer's testimony at the *Fatico* hearing.

Prior to Belmar's sentencing, the district court found that Belmar's base offense level was 20 but added a four-level increase because it found, by a preponderance of the evidence, that Belmar used the firearm to commit reckless

4

endangerment in the first degree, in violation of N.Y. Penal Law § 120.25, not attempted murder. App'x 246–258. In rejecting the government's argument for the higher base offense level related to attempted murder, the court did not credit Belmar's submissions or general claims of innocence. By separate opinion, the court subsequently added two additional points, pursuant to U.S.S.G. § 3C1.1, because it found that Belmar's submissions were an attempt to obstruct justice. App'x 270–279. Based on these rulings, the district court calculated a total offense level of 26 and a Criminal History Category of IV with a corresponding Guideline Range of 92 to 115 months' imprisonment. App'x 280.

Belmar did *not* seek to withdraw his guilty plea, and counsel on appeal confirms that Belmar challenges only his sentence and does not seek vacatur of his conviction or to withdraw his guilty plea. That fact is dispositive of his Sixth Amendment claim. Belmar relies on *McCoy v. Louisiana*, in which the Supreme Court held that "[w]hen a client expressly asserts that the objective of '*[the client's]* defence' is to maintain innocence of the charged criminal acts," a lawyer "must abide by that objective and may not override it by conceding guilt." 584 U.S. 414,

423 (2018).[1] But here *Belmar himself*, in addition to his counsel, conceded his guilt on the record while pleading guilty. And he has not sought to withdraw that guilty plea.

On appeal, he argues that, though he admitted guilt to *possessing* the weapon in violation of § 922(g), he objected to defense counsel conceding for sentencing purposes that he was the person who *fired* the gun that he admitted possessing. This fine distinction is in tension with the evidence of his offense conduct as well as the across-the-board denial of guilt in Belmar's submissions to the court. Belmar cannot plausibly admit that he was the one who possessed the gun he dropped on the sidewalk while the officer gave chase while denying he was the one who shot the gun moments before that chase began. And in his written submissions he did not make that distinction. On this record, his unchallenged admission to possessing the gun was inseparable from a concession that he was the shooter.

As to his sentencing challenges, Belmar challenges the district court's imposition of an "obstruction of justice" increase pursuant to U.S.S.G. § 3C1.1 and its denial of a two-point reduction in the base offense level for acceptance of

---

[1] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

responsibility under U.S.S.G. § 3E1.1. The district court reasoned that Belmar's sworn submissions to the court falsely claiming that he did not commit the shooting were material to the district court's sentencing decision, and that Belmar made the claims with the specific intent to obstruct justice. We review the district court's factual findings for clear error but review whether those facts constitute obstruction without deference to the district court's reasoning. *United States v. Gershman*, 31 F.4th 80, 102 (2d Cir. 2022).

Section 3C1.1 permits a two-level increase in a defendant's offense level where "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction," and (2) the obstruction was material. U.S.S.G. § 3C1.1; *Id.* cmt. n.2. A statement is willful if the defendant had the "specific intent to obstruct justice, i.e., that the defendant consciously acted with the purpose of obstructing justice." *United States v. Woodard*, 239 F.3d 159, 162 (2d Cir. 2001). A statement is material if, if believed, it "would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 cmt. n.6. The Guidelines caution that § 3C1.1 is "not intended to punish a defendant for the exercise of a constitutional right" and warn that inaccurate

statements resulting from "confusion, mistake, or faulty memory" do not "necessarily reflect a willful attempt to obstruct justice." U.S.S.G. § 3C1.1 cmt. n.2.

A defendant's false statements to the court in anticipation of sentencing can support application of the obstruction of justice increase. *United States v. Hendron*, 43 F.3d 24, 25–26 (2d Cir. 1994). "If a defendant testifies to a detailed account that is demonstrably false, the enhancement has been found to apply." *United States v. Lewis*, 62 F.4th 733, 747 (2d Cir. 2023). For example, we have upheld application of the obstruction increase where a defendant filed a false affidavit in connection with a suppression motion in which he provided a detailed, and false, account of multiple requests he made to speak with an attorney at the time of his arrest. *United States v. Lincecum*, 220 F.3d 77, 80–81 (2d Cir. 2000).

But where, in connection with a suppression motion, a defendant made a general and vague sworn statement to the effect that he asked for a lawyer, we concluded that the increase did not apply. *United States v. Agudelo*, 414 F.3d 345, 350 (2d Cir. 2005). We concluded that "[e]xtending *Lincecum* to these facts would . . . raise the troubling prospect that future defendants might either be deterred from pressing arguably meritorious Fourth Amendment claims or unfairly punished when they do." *Id.*; *see also Lewis*, 62 F.4th at 747 ("Courts must

8

balance the need to disincentivize obstruction of justice through perjury with the risk of subjecting defendants to punishment for submitting an affidavit that raises a colorable suppression issue on which they do not ultimately prevail.").

Here, Belmar's statements in his uncounseled submissions to the court thoroughly critiqued the government's case and sought to strike the affidavit of the officer who testified against him, argued that the government had not mustered sufficient evidence to establish that he was the shooter, and, in his final submission, sought dismissal of the indictment for that reason. The closest he came to falsely testifying under oath that he was not the shooter was this statement:

> Mr. Belmar was persuaded by his (ex lawyer . . . ) into admitting [that] the gun was his. Mr. Belmar never stated that he shot a gun, *nobody give Mr. Belmar a gun* [and] he didn't want to admit that the gun was his.

App'x 172 (emphasis added).

Though he offered a fulsome critique of the evidence against him and emphasized that he did not *want* to admit the gun was his (even though he undisputedly did so and does not seek to withdraw his plea), these statements do not constitute the kind of detailed testimony as to specific facts that we have said support the obstruction increase. *See Lewis*, 62 F.4th at 747.

Rather, Belmar's statements in context suggest an effort to exercise the constitutional right to challenge the government's evidence—something the Guidelines expressly caution does *not* support the obstruction increase. *See* U.S.S.G. § 3C1.1 cmt. n.2 ("This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt . . . or refusal to enter a plea of guilty is not a basis for application of this provision.").

For these reasons, we conclude that the district court clearly erred in concluding that Belmar's challenges to the government's proof and his suggestion that he was pressured to plead guilty amounted to the kind of perjurious statement that can support the obstruction increase.

As to the district court's refusal to grant a downward adjustment due to Belmar's acceptance of responsibility, we conclude the district court did not abuse its discretion. *See United States v. Chu*, 714 F.3d 742, 746–47 (2d Cir. 2013) (refusal to grant an acceptance of responsibility adjustment is reviewed for abuse of discretion). A sentence reduction under U.S.S.G. § 3E1.1 applies when the "defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). The reduction is not automatic, and a guilty plea does not

entitle a defendant to it as a matter of right. U.S.S.G. § 3E1.1 cmt. n.3. The defendant bears the burden of demonstrating qualification for the reduction. *Chu*, 714 F.3d at 747.

"[A] defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction." U.S.S.G. § 3E1.1 cmt. n.1(A). But "[a] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." *Id.*

Here, Belmar's uncounseled submissions to the court disavowed responsibility for relevant conduct to the offense to which he pled guilty. On this record, the court did not abuse its discretion in denying a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. *Id.* cmt. n.3.

\* \* \*

For the foregoing reasons, the district court's judgment of conviction is **AFFIRMED,** and the sentence is **VACATED** and **REMANDED** for resentencing consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court